# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JULIA ZIMMERMAN,**

    Plaintiff,

vs.                                                              Case No: 23-

**ELIZABETH A. PENSLER, D.O., PLLC d/b/a "PENSLER VEIN AND VASCULAR SURGICAL INSTITUTE" and "ELIZABETH FACE + BODY MED SPA",** a Michigan Professional Limited Liability Company, **ELIZABETH A. PENSLER, D.O.,** an Individual, **ELIZABETH MED SPA, PLLC,** A Michigan Professional Limited Liability Company, **DEREK L. HILL, D.O., PLLC d/b/a "HILL ORTHOPEDICS",** a Domestic Professional Limited Liability Company, **DEREK L. HILL, D.O.,** an Individual, *Jointly and severally in their individual and official capacities,*

    Defendants.

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## COMPLAINT AND JURY DEMAND

## CLAIMS, PARTIES, AND JURISDICTION

1. This is an action for violations of the anti-retaliation provisions of Michigan Medicaid False Claims Act, MCL § 400.610c; the False Claims Act, 31 USC § 3730; the Elliott-Larsen Civil Rights Act ("ELCRA"); and for Termination in Violation of Michigan Public Policy.

2. Plaintiff Julia Zimmerman, ("Plaintiff" or "Zimmerman"), is a current resident of the County of Oakland, State of Michigan.

3. Defendant Elizabeth A. Pensler, D.O., PLLC (d/b/a "Pensler Vein and Vascular", "Pensler Vein and Vascular Surgical Institute", and "Elizabeth Face + Body Med Spa") is a domestic professional limited liability company that is headquartered and does business in the State of Michigan.

4. Defendant Elizabeth Med Spa, PLLC is a professional limited liability company that is headquartered and does business in the State of Michigan.

5. Defendant Derek L. Hill, D.O., PLLC (d/b/a "Hill Orthopedics") is a domestic professional limited liability company that does business and operates in the State of Michigan.

6. Defendant Elizabeth Pensler, D.O. ("Pensler") is a licensed Doctor of Osteopathic Medicine. She was a member and manager of Elizabeth A. Pensler, D.O., PLLC (and all its related entities) and Elizabeth Med Spa, PLLC at all relevant times. She is a resident of the State of Michigan.

7. Defendant Derek Hill, D.O. ("Hill") is a licensed Doctor of Osteopathic

Medicine. He was a member and manager of Derek L. Hill, D.O., PLLC (and its related entity) at all relevant times. He is a resident of the State of Michigan.

8. The amount in controversy herein exceeds $75,000.00 and this matter is otherwise appropriately before this tribunal.

## FACTUAL BACKGROUND
**Plaintiff Julia Zimmerman**

9. Prior to being hired by Defendants, Plaintiff Zimmerman obtained a Bachelor of Science degree from Michigan State University in Family and Consumer Sciences in 2005 and a Master of Science in Physician Assistant Studies Degree from Wayne State University in 2008.

10. Plaintiff has practiced as a licensed Physician Assistant since May 2008.

11. In October 2022, Plaintiff left her position as a Physician Assistant in another medical practice to accept employment with Defendants as a Physician Assistant in Defendants' Ferndale office.

12. Plaintiff's main job duties as a physician assistant included reviewing patients' medical histories, consulting with and examining patients, providing treatments, conducting procedures, diagnosing patients' conditions, and ordering diagnostic tests.

13. Plaintiff's job performance was always satisfactory or better.

14. Plaintiff discovered that Defendants were fraudulently billing the government services in violation of CMS billing guidelines. She repeatedly reported that

Defendants' billing practices violated Center for Medicare and Medicaid Services ("CMS") guidelines and constituted fraudulent billing. Defendants refused to change their practices. They pressured Plaintiff to fraudulently bill for her own services as if a physician had performed them, or as if the incident-to criteria were met, threatening that the medical practices could not afford to employ Plaintiff if she did not fraudulently bill the government. Plaintiff refused to fraudulently bill for the services she performed and continued to report instances of fraudulent billing she observed.

### Defendants Derive their Revenue from Billing Medicare and Medicaid For Medical Services

15. "Elizabeth Face + Body Med Spa" and "Elizabeth Med Spa, PLLC" provide cosmetic procedures marketed by their website for the purpose of "face, skin, and body rejuvenation" including Botox treatments, facials, IV hydration therapy, laser services, and weight loss injections. *See https://www.elizabethmedspa.com*.

16. "Pensler Vein and Vascular Surgical Institute", "Pensler Vein and Vascular" provide vein and vascular treatment including aortic aneurysm surgery, blood clot treatments, carotid artery surgery for stroke victims, spider and varicose vein removal, and renal dialysis access. *See https://drpensler.com/vein-vascular-treatments*.

17. "Hill Orthopedics" provides services including total and partial knee replacement surgeries, hip replacement surgeries, and pain control treatments. *See https://www.drhill.com*.

18. The Defendant medical practices make money by billing insurance providers for the above services, including state and federal Medicare and Medicaid programs.

19. Under CMS guidelines, services solely provided by physician assistants are typically reimbursed at a reduced rate of 85% of the fee schedule amount for services.

20. However, CMS guidelines provide an exception to this general rule for services performed by physician assistants that are provided "incident-to" the services of a physician. CMS generally allows 100% reimbursement for "incident-to" services.

21. CMS has strict guidelines for what services may be billed as "incident-to". "Incident-to" billing is only permissible if the physician conducts the patient's first appointment, creates the care plan, is on-site for any subsequent visits that the physician assistant bills for, and participates in any visits during which changes are made to the patient's care plan. *See* Medicare Benefit Policy Manual, Chapter 15, Section 60 (*https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c15.pdf*).

22. It is also considered fraudulent billing to bill the government for medical services that were not performed, or which are not medically indicated or necessary.

23. Defendants' business model is based in significant part on billing for medical services at the highest possible rate, regardless of whether billing the government at that rate is fraudulent.

**Plaintiff Engaged in Protected Activity by Investigating and Reporting Instances When Defendants Fraudulently Billed the Government for Medical Services**

24. In December 2022, Plaintiff was tasked with reviewing Defendants' incomplete and open scribed notes contained within patient electronic medical records. In pertinent part, Defendants asked Plaintiff to ensure that the billing codes entered for the services reflected in the charts were correct.

25. Plaintiff's analysis of Defendants' records revealed that diagnoses were being used for billing purposes that did not correspond with the diagnosis made during the patient encounter. This was done to ensure the encounter could be billed to the government.

26. Plaintiff's analysis also revealed that virtually all services were being billed as if they were either directly performed by Defendants Pensler and Hill, or, rarely, as "incident-to" services, even when the services were not performed by the physicians, and the criteria for "incident-to" billing were clearly not met.

27. Plaintiff learned that Defendants had engaged in these fraudulent billing practices for the past several years.

28. In January and February 2023, Plaintiff verbally complained to Defendants about and reported these fraudulent billing practices.

29. Plaintiff told Defendants that the practices were fraudulently billing for the services of physician assistants as if those services had been performed by one of

6

the physicians when this was not the case, and where the services did not meet "incident-to" criteria.

30. In March 2023, Defendants told Plaintiff to bill for her services as the service rendering provider and billing provider on Wednesdays (when Defendant Pensler was in surgery or off work and Defendant Hill was only present for part of the day) or when both physicians were out of town, only. This was unlawful.

31. Also in March 2023, Defendants instructed Plaintiff to continue billing services Plaintiff performed as if they were performed by the physicians if Defendants could be reached by phone or were able to stop by the office for a consult. This was also unlawful.

32. Plaintiff was later verbally instructed by Defendants that she could only bill for her services as the service rendering provider and billing provider if both physicians were on vacation. This was unlawful.

33. In mid-March 2023, Plaintiff emailed Defendants and stated that their instructions did not comport CMS criteria for billing. Plaintiff received no reply.

34. On or about March 23, 2023, Plaintiff met with Defendants Pensler and Hill and complained that Defendants were fraudulently billing for Plaintiff's and other physician assistants' services.

35. During this meeting, Defendants told Plaintiff that they "could not afford" to employ her if she refused to fraudulently bill the government for her services. Defendants stated that billing for Plaintiff's services in accordance with CMS guidelines

7

"wouldn't make sense" in that they would not be fully reimbursed for the services, or reimbursed at all depending on what services were rendered. Defendant Hill explained this by stating that Defendants needed to "claw back [income] where we can".

36. Defendants told Plaintiff that their billing practices would continue.

37. Defendants continued to fraudulently bill the government.

38. In early April 2023, Plaintiff verbally complained to one of Defendants' practice managers that Defendants were fraudulently billing for Plaintiff's and other physician assistants' services in violation of CMS guidelines.

39. In mid-April 2023, Plaintiff emailed Defendants Pensler and Hill stating that she remained concerned that fraudulent billing was taking place, and indicated that it still appeared Defendants were continuing to fraudulently bill for her services.

40. Plaintiff received no response. Defendants continued fraudulently billing for Plaintiff's services.

41. On May 8, 2023, Plaintiff noticed that Defendant Pensler had edited several of Plaintiff's charts to falsely indicate that Defendant Pensler, rather than Plaintiff, was the servicing and billing provider for procedures that Plaintiff had solely performed, and where Defendant Pensler had not seen the patient. Defendant Pensler also removed Plaintiff's name, and the name of all other physician assistants from the progress notes on these charts.

42. Plaintiff then sent an email to Defendants Pensler and Hill, stating that she refused to fraudulently bill for her services. Plaintiff stated that proper protocols for billing would also need to be reviewed with the staff.

### There is A Causal Nexus Between Plaintiff's Protected Activity and Defendants' Adverse Actions Against her, Including Plaintiff's Termination

43. Plaintiff's employment was terminated based solely on her protected activity as described herein.

44. In response to Plaintiff's May 8, 2023 email, Defendants asked her to attend a meeting the next day in the doctors' office.

45. When Plaintiff attempted to log into her electronic accounts on May 9, 2023, she found that she was locked out. When she called the help desk for assistance, the help desk employee told her that she should speak to her manager and that he was "so sorry". Plaintiff realized she was being fired.

46. Around 12:30 p.m. on May 9, 2023, Plaintiff was summoned to the doctors' office to meet with Defendants Pensler and Hill. They stated that her employment was being terminated.

47. Defendant Pensler explained that they were hiring a physician to replace Plaintiff. By way of explanation, Defendant Pensler stated, "you went ahead and started changing yourself to the billing provider."

48. When Plaintiff countered that her actions were in accordance with CMS guidelines, Defendants reiterated that the practice would "lose money" if she lawfully

9

billed for her services as a physician assistant. Plaintiff replied that she would not have accepted employment with Defendants if she knew it was contingent on her engaging in fraudulent billing.

## COUNT I
## VIOLATION OF THE RETALIATION PROVISION OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3730
*As Against Defendants Elizabeth A. Pensler, D.O., PLLC (and related entities), Elizabeth Med Spa, PLLC, and Derek L. Hill, D.O., PLLC (and related entities)*

49. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

50. The retaliation provision of the False Claims Act ("FCA") protects any employee, contractor or agent from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3720(h)(1).

51. Defendants Elizabeth A. Pensler, D.O., PLLC (and related entities), Elizabeth Med Spa, PLLC, and Derek L. Hill, D.O., PLLC (and related entities) including the individual Defendants, were Plaintiff's employers within the meaning of the Act and controlling federal and state law.

52. On numerous occasions, Plaintiff engaged in lawful acts, as set forth in more detail above, in an effort to stop one or more violations of the FCA, including

10

but not limited to, 31 U.S.C. §§ 3729(a)(1)(B), 3729(a)(1)(G), 3729(a)(1)(A) and 3729(a)(1)(C), by the Defendants.

53. The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

54. As set forth above, Plaintiff investigated and complained about wrongdoing by Defendants that could reasonably violate the FCA and lead to a viable FCA action. The core of these complaints was suspected fraud.

55. Defendants retaliated against Plaintiff for opposing, reporting, and refusing to participate in activity that is prohibited by the FCA.

56. Defendants retaliated against Plaintiff by intentionally, maliciously and with reckless disregard for the truth by terminating Plaintiff's employment.

57. Relief for violating 31 U.S.C. § 3730(h)(1) includes reinstatement of the employee, contractor, or agent with the same level of seniority that person would have had but for the discriminatory conduct, as well as double damages for back pay, interest on back pay, and special damages. Relief also includes reasonable attorneys' fees. *Id.* § 3730(h)(2).

58. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; anxiety about the future, physical and emotional distress, humiliation and

embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT II
## VIOLATION OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT, MCL § 400.610c
*As Against Defendants Elizabeth A. Pensler, D.O., PLLC (and related entities), Elizabeth Med Spa, PLLC, and Derek L. Hill, D.O., PLLC (and related entities)*

59. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

60. The Michigan Medicaid False Claims Act ("Michigan Medicaid FCA") is an act "to prohibit fraud in the obtaining of benefits or payments in connection with the medical assistance program; to prohibit kickbacks or bribes in connection with the program; to prohibit conspiracies in obtaining benefits or payments; . . . to provide for civil actions to recover money received by reason of fraudulent conduct; . . . to prohibit retaliation; to provide for certain civil fines; and to prescribe remedies and penalties." Michigan Medicaid False Claim Act 72 of 1977. (Emphasis added).

61. Additionally, "[a]n employer shall not discharge, demote, suspend, threaten, harass, or in any other manner, discriminate against an employee in the terms and conditions of employment because the employee engaged in lawful acts, including initiating, assisting in, or participating in the furtherance of an action under this act or because the employee cooperates with or assists in an investigation under this act."

12

MCL § 400.610c.

62. Defendants Elizabeth A. Pensler, D.O., PLLC (and related entities), Elizabeth Med Spa, PLLC, and Derek L. Hill, D.O., PLLC (and related entities) were Plaintiff's employers within the meaning of the Act and controlling federal and state law.

63. An employer who violates this section is liable to the employee for all of the following:

    (a)    Reinstatement to the employee's position without loss of seniority;

    (b)    Two times the amount of lost back pay;

    (c)    Interest on the back pay;

    (d)    Compensation for any special damages; and

    (e)    Any other relief necessary to make the employee whole. MCL § 400.610c(2).

64. As an employee of Defendants, Plaintiff took lawful acts in furtherance of an action under the Michigan Medicaid FCA. She, on numerous occasions, investigated, reported and objected to Defendants' violations of this Act, as set forth in more detail above.

65. Over Plaintiff's stated reports and objections, Defendants, through their own acts or the acts of their officers, knowingly made, used or caused to be made or used, false statements or false representations of material facts in an application for

Medicaid benefits to get false or fraudulent claims paid or approved by the State of Michigan in violation of MCL § 400.603(1), as set forth in more detail above.

66. Defendants retaliated against Plaintiff for her investigations and reports of her findings by intentionally, maliciously and with reckless disregard for the truth terminating her employment.

67. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; anxiety about the future, physical and emotional distress, humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT III
## TERMINATION IN VIOLATION OF MICHIGAN PUBLIC POLICY
### As Against All Defendants

68. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

69. In order to bill the state and federal Medicare and Medicaid programs for medical services, Defendants must comply with state and federal law, statutes, regulations, and/or rules promulgated pursuant to law, including as to the type of medical treatment provided, the individual providing the treatment, and the circumstances under which the treatment was provided.

70. Defendants asked and expected Plaintiff to acquiesce in their violation of laws, statutes, regulations, and/or rules promulgated pursuant to law regarding billing the state and federal Medicare and Medicaid programs for medical services, when she was asked to approve patient records concerning other practitioners that were written in a manner to fraudulently bill the government and asked to fraudulently bill for her own services.

71. Plaintiff refused to acquiesce in violations or suspected violations of state and/or federal laws and/or rules promulgated pursuant to law related to the issue of billing the state and federal Medicare and Medicaid programs for medical services when she refused to approve patient records concerning other practitioners that were written in a manner to fraudulently bill the government and refused to fraudulently bill for her own services.

72. Plaintiff refused to violate state and/or federal laws and/or rules promulgated pursuant to law related to the issue of billing the state and federal Medicare and Medicaid programs for medical services when she refused to approve patient records concerning other practitioners that were written in a manner to fraudulently bill the government and refused to fraudulently bill for her own services.

73. Plaintiff acted in accordance with her statutory right or duty to bill for medical services in accordance with state and federal law and/or rules promulgated pursuant to law when she refused to approve patient records concerning other

practitioners that were written in a manner to fraudulently bill the government and refused to fraudulently bill for her own services.

74. The rights and duties exercised by Plaintiff were conferred by well-established legislative enactments.

75. Plaintiff's termination was carried out in retaliation for her refusing to acquiesce in violations or suspected violations of state and/or federal laws and/or rules promulgated pursuant to law; refusing to violate state and/or federal laws and/or rules promulgated pursuant to law; and acting in accordance with her statutory right or duty to bill for medical services in accordance with state and federal law and/or rules promulgated pursuant to law.

76. Plaintiff's termination violated clearly established public policy of the State of Michigan in that an employer may not discharge an employee because they refuse to acquiesce in actual or suspected legal violations, refuse to violate the law, and/or act in accordance with a statutory right, duty, or exception.

77. Defendants, through their agents, servants, or employees, violated the public policy of the State of Michigan by retaliating against Plaintiff and terminating her for engaging in the above referenced protected activity.

78. The actions of Defendants, their agents, representatives, and employees were intentional, wanton, willful, malicious and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

79. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment was adversely affected. Plaintiff's employment was unlawfully terminated.

80. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; anxiety about the future, physical and emotional distress, humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demand judgment against Defendants as follows:

**A. LEGAL RELIEF**

1. Economic, noneconomic and compensatory damages in whatever amount Plaintiff is found to be entitled;

2. Exemplary damages in whatever amount Plaintiff is found to be entitled;

3. Punitive damages in whatever amount Plaintiff is found to be entitled;

4. Liquidated damages, treble damages, and double damages in whatever amount Plaintiff is found to be entitled; and

5. An award of interest, costs and reasonable attorney fees.

B. **EQUITABLE RELIEF**

1. An order from this Court placing Plaintiff in the position she would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2. An injunction out of this Court prohibiting any further acts of wrongdoing;

3. An award of interest, costs and reasonable attorney fees; and

4. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: July 10, 2023                **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Julia Zimmerman, by and through her attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

Dated: July 10, 2023                **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)

Attorneys for Plaintiff  
33 Bloomfield Hills Parkway, Suite 220  
Bloomfield Hills, Michigan 48304  
(248) 258-2500  
dgordon@deborahgordonlaw.com  
emarzottotaylor@deborahgordonlaw.com  
sthomas@deborahgordonlaw.com  
msavage@deborahgordonlaw.com