## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JULIA ZIMMERMAN,**

     Plaintiff,

vs.

**ELIZABETH A. PENSLER, D.O., PLLC d/b/a "PENSLER VEIN AND VASCULAR SURGICAL INSTITUTE" and "ELIZABETH FACE + BODY MED SPA",** a Michigan Professional Limited Liability Company, **ELIZABETH A. PENSLER, D.O.,** an Individual, **ELIZABETH MED SPA, PLLC,** A Michigan Professional Limited Liability Company, **DEREK L. HILL, D.O., PLLC d/b/a "HILL ORTHOPEDICS",** a Domestic Professional Limited Liability Company, **DEREK L. HILL, D.O.,** an Individual, *Jointly and severally in their individual and official capacities,*

     Defendants.

Case No: 23-cv-11634
Hon. Nancy G. Edmunds
Mag. Judge Anthony P. Patti

---

| | |
|---|---|
| **DEBORAH GORDON LAW** | **THE HEALTH LAW PARTNERS, P.C.** |
| Deborah L. Gordon (P27058) | Clinton Mikel (P73496) |
| Elizabeth Marzotto Taylor (P82061) | *Attorneys for the Defendants* |
| Sarah Gordon Thomas (P83935) | 32000 Northwestern Highway, Suite 240 |
| Molly Savage (P84472) | Farmington Hills, MI 48334 |
| *Attorneys for Plaintiff* | Tel: (248)996-8510 |
| 33 Bloomfield Hills Parkway, Suite 220 | emikel@thehlp.com |
| Bloomfield Hills, Michigan 48304 | |
| (248) 258-2500 | |
| dgordon@deborahgordonlaw.com | |
| emarzottotaylor@deborahgordonlaw.com | |
| sthomas@deborahgordonlaw.com | |
| msavage@deborahgordonlaw.com | |

---

## PLAINTIFF'S OMNIBUS RESPONSE TO MOTION REQUESTING JUDICIAL NOTICE [ECF NO. 18] AND MOTION TO DISMISS [ECF NO. 19]

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.............................................................................. iii

I.      FACTS............................................................................................. 1

II.     LAW AND ARGUMENT ................................................................ 5

     A.      Rule 12(b)(6) Standard of Review ............................................ 5

     B.      Consideration of Documents Extraneous to the Pleadings at the
           12(b)(6) Stage .......................................................................... 6

     C.      Plaintiff Sufficiently Pled All Elements Required under the FCA ........... 7

           1.      Plaintiff Pled that she Engaged in "Protected Activity".............. 10

           2.      Plaintiff Sufficiently Pled Notice ..................................... 24

           3.      Plaintiff Pled a Causal Nexus Between her Protected Activity
                and her Termination ....................................................... 32

     D.      Plaintiff Sufficiently Pled that she Engaged in Protected Activity
           and Provided Sufficient Notice under the MMFCA................................ 34

     E.      Plaintiff's Public Policy Tort Claim is Not Preempted............................ 36

III.    CONCLUSION .............................................................................. 37

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Alcona Cnty. v. Wolverine Env't Prod., Inc.,*
233 Mich. App. 238 (1998) ............................................................................................... 34

*Apseloff v. Family Dollar Stores, Inc.,*
236 Fed. App'x 185 (6th Cir. 2007) ................................................................................... 6

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
528 F.3d 426 (6th Cir. 2008) .............................................................................................. 6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................... 5

*Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
774 F. App'x 942 (6th Cir. 2019) ....................................................................................... 6

*Burns v. United States,*
542 F. App'x 461 (6th Cir. 2013) ..................................................................................... 23

*Cephas-Hill v. Linden Med. Ctr./Mid-Ohio Fam. Prac. Assocs.,*
2022 WL 5177771 (S.D. Ohio Aug. 2, 2022) .................................................................. 28

*Columbia Natural Res., Inc. v. Tatum,*
58 F.3d 1101 (6th Cir. 1995) .............................................................................................. 5

*Davis v. City of Clarksville,*
492 Fed.Appx. 572 (6th Cir.2012) ..................................................................................... 7

Dye v. Office of the Racing Comm'n,
702 F.3d 286 (6th Cir.2012) ............................................................................................. 33

*Fakorede v. Mid-S. Heart Ctr., P.C.,*
709 F. App'x 787 (6th Cir. 2017) ..................................................................................... 11

*Fleming v. Wayne Cnty. Jail,*
No. NO. 19-12297, 2023 WL 4994943 (E.D. Mich. Aug. 4, 2023) ........................... 18

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
545 U.S. 409 (2005) ........................................................................................................... 8

*Halasa v. ITT Educ. Sys., Inc.,*
  690 F.3d 844 (7th Cir. 2012) ............................................................................. 10

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984) .............................................................................................. 6

*Ickes v. Nexcare Health Sys., L.L.C.,*
  178 F. Supp. 3d 578 (E.D. Mich. 2016) ........................................................... 13

*Ickes v. Nexcare Health Sys., L.L.C.,*
  178 F. Supp. 3d 578 (E.D. Mich. 2016) ........................................................... 13

*In re Blasingame,*
  986 F.3d 633 (6th Cir. 2021) ............................................................................ 28

*In re Omnicare, Inc. Sec. Litig.,*
  769 F.3d 455 (6th Cir. 2014) .............................................................................. 7

*Jones–McNamara v. Holzer Health Sys.,*
  630 Fed.Appx. 394 (6th Cir.2015) ..................................................................... 7

*Kachaylo v. Brookfield Tp. Bd. of Trs.,*
  778 F.Supp.2d 814 (N.D. Ohio 2011) .............................................................. 25

*Lee v. Sheet Metal Workers' Nat. Pension Fund,*
  697 F. Supp. 2d 781 (E.D. Mich. 2010) ............................................................. 5

*Manfield v. Alutiiq Int'l Solutions, Inc.,*
  851 F.Supp.2d 196 (D.Me.2012) ...................................................................... 27

*McKenzie v. BellSouth Tel., Inc.,*
  219 F.3d 508 (6th Cir. 2000) .............................................................................. 8

*McKenzie v. BellSouth Telecommunications, Inc.,*
  219 F.3d 508 (6th Cir. 2000) .............................................................................. 7

*Mehlman v. Cincinnati Children's Hosp. Med. Ctr.,*
  2021 WL 3560571 (S.D. Ohio Aug. 11, 2021) ................................................ 25

*Mickey v. Zeidler Tool & Die Co.,*
    516 F.3d 516 (6th Cir.2008) ............................................................. 33

*Mikes v. Strauss,*
    889 F.Supp. 746 (S.D.N.Y.1995) ...................................................... 9

*Mikhaeil v. Walgreens Inc.,*
    2015 WL 778179 (E.D. Mich. 2015) ................................................ 10

*Mikhaeil v. Walgreens Inc.,*
    2015 WL 778179 (E.D. Mich. Feb. 24, 2015) ................................. 13

*Ouwinga v. Benistar 419 Plan Servs., Inc.,*
    694 F.3d 783 (6th Cir. 2012) ........................................................... 23

*Passa v. City of Columbus,*
    123 F. App'x 694 (6th Cir. 2005) .................................................... 23

*Reilly v. Vadlamudi,*
    680 F.3d 617 (6th Cir. 2012) ........................................................... 18

*Robertson v. Bell Helicopter Textron, Inc.*
    32 F.3d 948 (5th Cir.1994) ............................................................... 9

*Rouse v. Washington,*
    No. 20-CV-11409, 2021 WL 2434196 (E.D. Mich. June 15, 2021) ......................... 18

*Scott v. Metro. Health Corp.,*
    234 Fed.Appx. 341 (6th Cir.2007) .................................................. 32

*Sheoran v. Walmart Stores E., LP,*
    142 S. Ct. 1210, 212 L. Ed. 2d 217 (2022) ................................... 28

*Sigler v. Am. Honda Motor Co.,*
    532 F.3d 469 (6th Cir.2008) ............................................................. 7

*Silberstein v. Pro Golf Am., Inc.,*
    278 Mich.App. 446 (2008) ............................................................... 36

*Smith v. C.R. Bard, Inc.,*
    730 F. Supp. 2d 783 (M.D. Tenn. 2010) ...................................... 15

*Suchodolski v. Michigan Consol. Gas Co.*,
  412 Mich. 692 (1982) ................................................................................ 35

*Tibor v. Michigan Orthopaedic Inst.*,
  72 F. Supp. 3d 750 (E.D. Mich. 2014) .................................................... 12

*United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*,
  721 F. App'x 451 (6th Cir. 2018)……………………………………..…..17

*U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Emps. of Hawaii Pac. Health*,
  343 F. App'x 279 (9th Cir. 2009) ............................................................ 26

*U.S. ex rel. Lockyer v. Hawaii Pac. Health*,
  490 F. Supp. 2d 1062 (D. Haw. 2007) ..................................................... 26

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
  525 F.3d 439 (6th Cir. 2008) .................................................................... 13

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
  525 F.3d 439 (6th Cir. 2008) .................................................................... 11

*U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.*,
  123 F.3d 935 (6th Cir. 1997) ............................................................... 8, 10

*U.S. ex rel. Yanity v. J & B Med. Supply Co.*,
  2012 WL 4811288 (E.D. Mich. Oct. 10, 2012) ..................................... 34

*U.S. ex rel. Yesudian v. Howard Univ.*,
  153 F.3d 731 (D.C. Cir. 1998) ................................................................ 14

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
  525 F.3d 439 (6th Cir. 2008) ..................................................................... 8

*United States ex rel. Rahimi v. Rite Aid Corp.*,
  3 F.4th 813 (6th Cir. 2021) ...................................................................... 24

*United States v. Wal-Mart Stores E., LP*,
  858 F. App'x 876 (6th Cir. 2021) ........................................................... 28

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) ................................................................................... 9


**Other Authorities**

MCL § 400.610c........................................................................................................ 34
MCL 400.610(c)(1) ................................................................................................... 33
Mich. Comp. Laws Ann. § 400.610c (West).................................................................. 33


**Rules**

Federal Rule of Procedure 12(b)(6) ........................................................................... 5
Rule 12(b)(6)............................................................................................................. 5

## I.    FACTS

Plaintiff Julia Zimmerman filed this lawsuit after Defendants terminated her for engaging in conduct that is protected by the anti-retaliation provisions of the state and federal False Claims Acts and Michigan's public policy. ECF No. 11. Plaintiff has been a licensed Physician Assistant since 2008. ECF No. 11, PageID.48, ¶ 10. Defendants Elizabeth A. Pensler, D.O. and Derek Hill, D.O. are both licensed Doctors of Osteopathic Medicine, and own and operate the Defendant corporate entities (Defendant Elizabeth A. Pensler, D.O. PLLC, Elizabeth Med Spa, PLLC, and Derek L. Hill, D.O., PLLC), which are their medical practices. *Id.* at PageID.47, ¶¶ 3-7. Both the individual Defendants and the Defendant corporate entities bill insurance providers, including state and federal Medicare and Medicaid programs for the various medical services they and their employees provide. *Id.* at PageID.48-49, ¶¶ 14-17.

The Center for Medicaid and Medicare Services ("CMS") has strict guidelines that must meet to lawfully bill the government for medical services. For example, CMS has mandated that services solely provided by physician assistants are reimbursed at a reduced rate of 85% of the CMS fee schedule amount for the value of the services. *Id.* at PageID. 49, ¶ 18. However, if the same services were provided by a non-physician "incident-to" the services of a supervising physician, or by the physician themselves, CMS generally allows 100% reimbursement. *Id.* at PageID. 49, ¶ 19. There are, in turn, strict requirements that must be met to lawfully bill for "incident-to" services. The general rule is that the supervising physician must have conducted the patient's first

appointment, created the care plan, be on-site for any subsequent visits that the physician assistant bills for, and participate in any visits during which changes are made to the patient's care plan. *Id.* at PageID. 49, ¶ 20. It is illegal, and considered fraudulent billing, to bill the government for medical services that were not performed, to misrepresent who performed the services being billed for, and to bill for "incident to" services when CMS criteria for "incident to" services are not met. *Id.* at PageID. 50, ¶ 21.

In October 2022, Plaintiff accepted employment with Defendants as a Physician Assistant. *Id.*, ¶ 11. In December 2022, Defendants asked Plaintiff to review their incomplete and open patient medical records. ECF No. 11, PageID.50, ¶ 22. Plaintiff analyzed the records, and learned that Defendants were recording diagnoses for billing purposes that did not correspond with the diagnoses made during the patient encounter, in order to fraudulently bill the government. *Id.* at PageID.50, ¶ 23. Plaintiff also observed that Defendants billed for virtually all medical services as if they were performed by the Defendant physicians, when this was untrue. *Id.* at ¶ 24. Plaintiff further observed that in rare cases, Defendants billed for services as though they had been performed "incident to" the services of one of the Defendant physicians, even though the government's criteria for lawful "incident to" billing were not met. *Id.* This was fraudulent billing. *Id.* at ¶ 25.

After uncovering Defendants' unlawful billing practices, Plaintiff engaged in protected activity by making verbal and written reports of suspected fraud on the

government designed to expose and stop one or more violations of the FCA. In January and February 2023, Plaintiff reported the fraudulent billing practices she had observed thus far to Defendants. *Id.* at ¶ 26. In March 2023, Defendants instructed Plaintiff to fraudulently bill the government. Defendants directed Plaintiff to bill the government for medical services she had solely performed as if these services had been performed by one of the Defendant physicians, when this was untrue. *Id.* at PageID.51, ¶ 27. They also instructed Plaintiff to bill for her services as "incident to" the services of the Defendant physicians when this was untrue. *Id.* In mid-March 2023, Plaintiff emailed Defendants stating that their instructions were contrary to government criteria for lawful billing. Defendants never responded. *Id.* at 28.

Plaintiff continued her efforts to expose and stop Defendants' violations of the FCA. On or about March 23, 2023, Plaintiff met with the Defendant physicians and reported that they were fraudulently billing for Plaintiff's services, and those of other employees. *Id.* at ¶ 29. Defendants Pensler and Hill told Plaintiff that they "could not afford" to employ her if the government was not fraudulently billed for her services. *Id.* at ¶ 30. Defendants Pensler and Hill told Plaintiff that lawfully billing "wouldn't make sense" financially, because if they did so, they would not receive 100% of the CMS reimbursement amount for the services she provided, or in some cases, any reimbursement at all. *Id.* Defendant Hill told Plaintiff that the physicians and their corporate entities needed to "claw back [income]" by fraudulently billing. *Id.*

3

After this conversation, Defendants' FCA violations continued, and Plaintiff continued to report suspected fraud. *Id.* at ¶ 31. In April 2023, Plaintiff complained to one of Defendants' practice managers that the physicians and corporate entities were fraudulently billing the government for Plaintiff's services and the those of other employees. *Id.* at 32. In mid-April 2023, Plaintiff emailed the Defendant physicians, and told them that she believed they were still fraudulently billing for her services. They did not respond. *Id.* at 33-34.

On May 8, 2023, Plaintiff learned that Defendant Pensler had edited several of Plaintiff's patient charts in order to support Defendants' fraudulent billing scheme. *Id.* at PageID.52, ¶ 35. Defendant Pensler had altered Plaintiff's charts to falsely indicate that Pensler, rather than Plaintiff, had been both the servicing and billing provider, when this was untrue. *Id.* Plaintiff learned that Defendant Pensler had gone so far as to completely remove Plaintiff's name, and the names of other physician assistants from the progress notes on these charts. *Id.* Falsely representing that Defendant Pensler had performed these medical services would allow Defendants to fraudulently bill the government. *Id.* at PageID.49, ¶ 18-19, 21. Plaintiff reached out to Defendants Pensler and Hill by email that day, in order to expose and stop this violation of the FCA. Plaintiff expressed that she would not fraudulently bill the government for her medical services. *Id.* at PageID.51-52 ¶¶ 35-36. Defendants asked her to meet with them the next day. *Id.* at ¶ 37.

Plaintiff met with Defendants Pensler and Hill on May 9, 2023. They told her that her employment was being terminated. *Id.* at ¶ 39. Defendant Pensler stated that Plaintiff was being fired because of her efforts to expose and stop fraudulent billing, including that Plaintiff "went ahead and started changing [herself] to the billing provider." *Id.* at ¶ 40. When Plaintiff countered that she had done this to lawfully bill for her services, Defendants told her that they would "lose money" if they did not fraudulently bill. *Id.* at ¶ 41. Defendants fired Plaintiff because she exposed and attempted to stop violations of the FCA.

## II.     LAW AND ARGUMENT

### A.     Rule 12(b)(6) Standard of Review

Under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Lee v. Sheet Metal Workers' Nat. Pension Fund*, 697 F. Supp. 2d 781, 784 (E.D. Mich. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the court

on a motion to dismiss. *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012). The Court may only dismiss a complaint "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Apseloff v. Family Dollar Stores, Inc.*, 236 Fed. App'x 185, 187 (6th Cir. 2007) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## B. Consideration of Documents Extraneous to the Pleadings at the 12(b)(6) Stage

For the purposes of a 12(b)(6) analysis, a court may consider the First Amended Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss only if those documents are referred to in the First Amended Complaint and are central to the claims therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89-91 (6th Cir. 1997) *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (court considered ERISA plan documents referred to in complaint alleging ERISA violations to determine whether the plaintiff exhausted the administrative remedies provided under the plan but declined to consider agreements not mentioned in the complaint); *see also Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 F. App'x 942, 947 (6th Cir. 2019) (court considered "Benefits Guide" referred to in ERISA complaint, holding that as a matter of law ERISA claims could not be brought under the document because it explicitly stated

that it was not an official plan document or summary plan description within the meaning of ERISA).

However, as set forth above, findings of fact are not permissible at the pleadings stage. Neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. of Evid. 201 permit the courts to take judicial notice of disputed facts purportedly contained in exhibits to a motion to dismiss for the truth of the matters asserted. *Davis v. City of Clarksville,* 492 Fed.Appx. 572, 578 (6th Cir.2012) (recognizing this distinction); *Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 476–77 (6th Cir.2008) (same). *See also In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014) (court declined to take judicial notice of documents submitted for the truth of the matter asserted therein).

## C.   Plaintiff Sufficiently Pled All Elements Required under the FCA

A claim under § 3730(h) requires proof that (1) the plaintiff "was engaged in a protected activity"; (2) his "employer knew that [he] engaged in the protected activity"; and (3) his "employer discharged ... the employee as a result of the protected activity." *Jones–McNamara v. Holzer Health Sys.*, 630 Fed.Appx. 394, 398 (6th Cir. 2015). Plaintiff need not use "magic words" like "illegality" or "fraud". *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000); *see also Mehlman*, 2021 WL 3560571, at *5 (notice to employer need not explicitly characterize concerns as involving false claims against the government). Nor does a § 3730(h) plaintiff need to plead or prove an actual violation of § 3729. *Jones–McNamara*, 630 Fed.Appx. at

399 (citing *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 428 n. 1 (2005)).

Instead, Plaintiff's allegations must have grown out of a reasonable belief that there was fraud, comprising both her own subjective good faith belief, and a showing that a reasonable employee in the same or similar circumstances might also believe that the employer was engaged in fraud. *Id.* at 399-400. Plaintiff's protected activity must relate to "exposing fraud" or "involvement with a false claims disclosure" and must reasonably embody "efforts to stop" FCA violations. *Id.* at 399, citing 31 U.S.C. § 3730(h); *see also McKenzie v. BellSouth Tel., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000).

As to the second prong, the employer must be on notice that the plaintiff's complaints have some nexus to a concern about fraud on the federal government. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 (6th Cir. 2008). To provide notice, a plaintiff need not explicitly characterize her concerns as involving false claims, but she must connect them to a concern about fraud on the federal government. *Marlar*, 525 F.3d at 450 (citing *McKenzie v. BellSouth Telecomms., Inc. (McKenzie II)*, 219 F.3d 508, 516 (6th Cir.2000) (holding that an employee "must sufficiently allege activity with a nexus to a *qui tam* action, or fraud against the United States government").

Notably, in *Marlar*, the Sixth Circuit rejected the notice standard Defendants advance here, finding that it "impermissibly narrows the interpretation we have given 'protected activity'". *Marlar*, 525 F.3d at 449. Even before the statutory definition of protected activity was expanded, a plaintiff was only required to allege activities that

would have given the defendant some reason to believe she was contemplating a qui tam action. *United States ex rel. McKenzie v. BellSouth Telecomms., Inc. (McKenzie I),* 123 F.3d 935, 944 (6th Cir.1997) (abrogated on other grounds). The Court drew this test from *Mikes v. Strauss,* 889 F.Supp. 746, 753 (S.D.N.Y.1995), which held that a plaintiff is entitled to recovery under § 3730(h) when she alleges that she observed purportedly fraudulent activity, she confronted her employer about it, and her employer fired her because of it. 889 F.Supp. at 752–53.

The notice standard announced in *Mikes,* was in turn based on *Robertson v. Bell Helicopter Textron, Inc.* 32 F.3d 948 (5th Cir.1994). In *Robertson,* the Fifth Circuit held that "internal whistleblowers" were protected by § 3730(h). *Robertson,* 32 F.3d at 951. According to the *Robertson* court, an "internal whistleblower" is "an employee who has made an intracorporate complaint about fraud against the government." *Id.* According to the Fifth Circuit, in order to provide sufficient notice, such a complaint must "characterize[ ] [the plaintiff's] concerns as involving illegal, unlawful or false-claims" against the government. *Id.* at 952. In sum, an intracorporate complaint about fraud that characterizes the plaintiff's concerns as involving illegal, unlawful, or false claims against the government is sufficient to put the defendant on notice of protected activity.

Finally, as to the third prong, Plaintiff must plead that Defendants discharged or otherwise discriminated against her as a result of her protected activity. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003). Plaintiff's Amended Complaint satisfies each prong of the FCA retaliation standard.

### 1.    Plaintiff Pled that she Engaged in "Protected Activity"

The Fraud Enforcement and Recovery Act of 2009 (FERA), PL 111-21, May 20, 2009, 123 Stat 1617, expanded the scope of protected activity under the FCA. *See Mikhaeil v. Walgreens Inc.*, 2015 WL 778179 at *7 (E.D. Mich. 2015) (explaining FERA's amendment of the FCA's anti-retaliation provision). Two categories of conduct are considered protected activity under the Act. "In addition to protecting lawful acts taken in furtherance of an action under the FCA" the Act also protects 'employees from being fired for undertaking other efforts to stop violations of the Act, such as reporting suspected misconduct to internal supervisors.' " *Id.* quoting *Halasa v. ITT Educ. Svs., Inc.*, 690 F.3d 844, 847 (7th Cir. 2012). *See also* 155 Cong. Rec. E1295-03, E1300, 2009 WL 1544226 (daily ed. June 3, 2009) (statement of Rep. Berman that § 3730(h) protects steps such as internal reporting to a supervisor, whether or not they are clearly in furtherance of a potential or actual qui tam action). The FCA's legislative history, approvingly cited by the courts, states that "*Protected activity should…be interpreted broadly.*" S.REP. NO. 99–345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300; *see also U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997) (same).

Plaintiff's numerous internal reports to the Defendant physicians and their practice managers were "undoubtedly an 'effort'" to stop FCA violations. *Mikhaeil*, 2015 WL 778179, at *7. Plaintiff satisfied this requirement by making numerous verbal

and written reports to the Defendant physicians and their practice managers indicating that Defendants were engaged in fraudulent activities. *Marlar*, 525 F.3d at 449–50.

Defendants' reliance on *Fakorede,* is inapt. The Sixth Circuit held that Fakorede did not engage in protected activity under the FCA because he expressed concerns about whether costs his employer attributed to him were correctly calculated and reimbursed by a state of Tennessee entity and reminded colleagues to check for compliance with federal law. "This failed to allege conduct reasonably related to fraud against the federal government." *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 F. App'x 787, 790 (6th Cir. 2017). Whereas *Fakorede* fell short of engaging in protected activity because he merely "reminded" his employer that an audit should check for compliance with federal law, Plaintiff unambiguously exposed and made efforts to stop her employer's ongoing practice of unlawfully billing the government for medical services.

In sharp contrast to *Fakorede*'s statements, the common theme of Plaintiff's allegations was her reasonable suspicion that Defendants and their corporate entities were fraudulently billing the government by falsely documenting diagnoses in order to bill the government for medical services provided (ECF No. 11, PageID.50, ¶ 23); falsely representing that the Defendant physicians, rather than their employees, had performed medical services in order to obtain a higher reimbursement rate (*id.* at ¶ 24); and billing for services as if they were performed "incident to" a supervising physician, when this was untrue (*id.*, *id.* at ¶ 26). When Defendants instructed Plaintiff to unlawfully bill for medical services she had performed, Plaintiff told the Defendant

physicians and their practice manager that they were fraudulently billing for her and her coworkers' services (*id.* at PageID.51, ¶¶ 27-29, 32, 33). Plaintiff pled that after Defendants told her to "unlawful[ly]" bill for her services, that in mid-March 2023, she told Defendants that their billing practices were in violation of CMS billing requirements (*id.* at ¶ 28). Plaintiff's straightforward claim that she repeatedly reported fraud and told Defendants that they had instructed her to unlawfully bill the government cannot reasonably be interpreted as "merely urging compliance with regulations".

Finally, Plaintiff alleges that when she caught Defendant Pensler falsifying records of medical services that Plaintiff performed in order to fraudulently bill for them, she told the Defendant physicians by email that she would not engage in fraudulent billing. Defendants told Plaintiff that they fired her because of her efforts to stop their violations of the FCA, including that she "started changing herself to the billing provider" instead of going along with their false representations. Defendants claimed that she had to be terminated because they would "lose money" if Plaintiff lawfully billed for the medical services she performed (*id.* at PageID.52, ¶¶ 39-41). The core of each of Plaintiff's complaints was suspected fraud. The statutory definition of protected activity plainly includes what Plaintiff did here—reporting suspected misconduct to internal supervisors. *Tibor v. Michigan Orthopaedic Inst.*, 72 F. Supp. 3d 750, 761 (E.D. Mich. 2014) (plaintiff told her employer that she believed a contract violated an anti-kickback statute).

In *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008), the plaintiff engaged in protected activity by writing a letter to the company president and general manager asserting that she was placed on leave for refusing to participate in illegally under-reporting occupational injuries and illnesses to the government, which had resulted in incentive payments to the company under its government contract. *Marlar*, 525 F.3d at 449. Like in *Marlar*, Plaintiff repeatedly complained to Defendants that they were fraudulently billing the government for medical services performed by herself and other physician assistants and expressed her unwillingness to engage in fraud.

In *Mikhaeil v. Walgreens Inc.*, 2015 WL 778179, at *3 (E.D. Mich. Feb. 24, 2015), the plaintiff engaged in protected activity by telling her supervisor about "prescription violations" by another employee, including when incorrect medication was provided, and an incorrectly-filled a prescription was not reversed, resulting in the government being billed twice. Similarly, in *Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp. 3d 578, 595 (E.D. Mich. 2016), the plaintiff engaged in protected activity by complaining that she believed defendants were falsely telling patients that long-term beds were unavailable and discharging them once their payment source changed from a Medicare Part A to a less lucrative source. *Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp. 3d 578, 594 (E.D. Mich. 2016).

Just like the plaintiffs in *Mikhaeil* and *Ickes*, Plaintiff alleged that she told the Defendant physicians and their practice manager that she was concerned about several instances of fraudulent billing. As this Court held in *Mikhaeil*:

> "[m]aking a report of potential Medicare fraud is not 'merely reporting wrongdoing to supervisors.' *McKenzie,* 219 F.3d at 516. It is an internal report that alleges fraud on the government. That is protected activity under the FCA. *See Marlar,* 525 F.3d at 450 (holding that an employee adequately plead that she engaged in a protected activity where she "allege[d] that she observed purportedly fraudulent activity and confronted her employer about it"

*Mikhaeil*, 2015 WL 778179, at *8.

Plaintiff's allegations cannot fairly be construed as "mere grumbling" about "regulatory violations". She alleged that she complained about illegal, fraudulent billings made to the government. Unlike the plaintiff in *Mikhaeil*, whose complaints about violations of Schedule II substance regulations did not allege fraud on the government, Plaintiff unambiguously complained about Defendants' ongoing practice of fraudulently billing the government for medical services performed by Plaintiff and her coworkers. *Id.*

As in *U.S. ex rel. Yesudian v. Howard Univ.*, the nature of Plaintiff's complaints could not have been mistaken for complaints about mere regulatory compliance. *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998). Like the plaintiff in *Yesudian*, Plaintiff asserted "a classic false claim" by contending that Defendants were "falsifying" records so that the federal government would pay them the 100%

reimbursement rate for work they did not do, but which had been performed by their employees and therefore should not have been reimbursed at the 100% rate. *Id.* at 744.

Nor did Plaintiff plead that her complaints were unconcerned with exposing fraud on the federal government. In *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 803 (M.D. Tenn. 2010), the plaintiff did not complain that his employer was defrauding the government. Rather, he complained because he feared that he could be personally liable for a crime because of his employer's promotion of off-label use of a drug. *Id.* at 799, 803. Plaintiff's reports were all connected to fraudulent billing on the government.

Contrary to Defendant's argument, well-settled law precludes the Court from considering the statements contained in Plaintiff's April and May 2023 emails for the truth of the matter asserted. *Davis v. City of Clarksville*, 492 Fed.Appx. 572, 578 (6th Cir.2012). Fed. R. Evid. 201(b) allows the court to take judicial notice of "a fact that is not subject to reasonable dispute" either because such a fact "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Here, the Court could, at most, take judicial notice of the existence of Plaintiff's emails. But as in *Davis*, this is not what Defendants ask the Court to acknowledge. Just as in *Davis*, the Court should reject Defendants' improper request that the Court make findings of fact based on these emails, the facts of which are disputed. *Davis*, 492 F. App'x 572, 578 (6th Cir. 2012). Plaintiff claims that in these emails, she is exposing Defendants' fraudulent billing practices and documenting her efforts to stop them from fraudulently billing for her

services. She pled that the core of these complaints, and her other reports, was suspected fraud, not concerns about her own personal liability for legal infractions unconnected to fraudulent billing. ECF No. 11, PageID.54, ¶ 47. Factual inferences cannot be drawn from these documents at the pleadings stage. The Court should decline to take judicial notice of them for the purpose of drawing factual inferences against Plaintiff at the pleadings stage.

In addition to her many other reports (ECF No. 11, PageID.50-53), Plaintiff pled that in mid-April 2023, she sent Defendants an email stating that she continued to have concerns about Defendants engaging in fraudulent billing practices, including as to services that Plaintiff provided to patients. ECF No. 11, PageID.51-52, ¶ 33. Plaintiff also pled that after catching Defendant Pensler falsifying records in order to fraudulently bill for Plaintiff's medical services, she emailed Defendants on May 8, 2023, exposing the violation and communicating her efforts to stop it. *Id.* at PageID.52, ¶¶ 35-36. Plaintiff stated that going forward she would modify her records to reflect accurate information, as she continued to be concerned with Defendants' practice of "billing in the physician's name" regardless of whether this was accurate or in accordance with "incident to criteria". ECF No. 19, PageID.229.

Plaintiff pled that on both occasions, she engaged in protected activity by making internal reports alleging Defendants were engaging in fraud on the government and documenting her efforts to stop violations of the FCA. *Mikhaeil*, 2015 WL 778179, at *8. On a motion to dismiss, the Court must credit Plaintiff's representations that

Defendants would have understood these complaints to implicate fraud on the government, given her previous objections and the knowledge of everyone involved. *United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 461 (6th Cir. 2018). Additionally, Plaintiff explicitly referred to Defendants' billing practices and used government-billing terminology when complaining, including referring to "indicat[ing] the PA as the servicing provider" and "incident to criteria". ECF No. 19, PageID.229. Where "otherwise ordinary complaints...are *inherently* tied to the standards for Medicare billing and where, as here, the whistleblower is clearly using Medicare-billing terminology when complaining to her superiors, she has pled the notice element of an FCA retaliation claim." *Crockett, Inc.*, 721 F. App'x 451, 461 (6th Cir. 2018).

Plaintiff sufficiently pled that she had both a subjective and objectively reasonable suspicion that Defendants were engaged in fraudulent billing. She alleged that her first-hand observations of Defendants' billing practices formed the basis for her good-faith and objectively reasonable belief that Defendants were engaged in billing fraud. Plaintiff alleged that she observed that Defendants' records showed that Defendants were recording false information in their medical records in order to allow them to fraudulently bill the government. ECF No. 11, PageID.50, ¶ 23. This included Defendants' practice of recording diagnoses for billing purposes that did not correspond with the diagnoses made during the patient encounters billed for, to ensure the encounters could be billed to the government. *Id.* Plaintiff also pled that she observed firsthand that Defendants engaged in billing fraud by billing for nearly all

services as if they were provided by the Defendant physicians when this was untrue. *Id.* at ¶ 24. She further pled that billing instructions given to her by Defendants were "unlawful", and that even after she complained about this, she continued to observe that Defendants were fraudulently billing for services that she and other physician assistants provided. *Id.* at PageID.51-52, ¶¶ 27-29, 35. Plaintiff's subjective and objectively reasonable belief that fraud was occurring was also based on statements Defendants made to her acknowledging that there was ongoing fraud, including the Defendant physicians stating that "they could not afford to employ her if she refused to fraudulently bill the government for her services" and that they were "claw[ing] back income" by fraudulently billing. *Id.* at PageID.51-52, ¶ 30, 41.

Defendants do not cite a single case in which a court held that similar allegations failed to plead a subjective, good faith belief that fraud was committed. In *Yesudian v. Howard Univ.*, similar personal knowledge of the plaintiff, including his observations that colleagues had falsified their time and attendance records, provided the requisite "good faith basis" for him to believe that the defendants were engaged in fraud against the government. 153 F.3d at 741. Plaintiff did not plead that her knowledge of Defendants' fraudulent activities was solely based on her review of medical records. Nor can Plaintiff's claim that Defendants' practice of tampering with medical records provided evidence of fraudulent billing be rejected as false at the pleadings stage.

Plaintiff's references to the physician Defendants and their corporate entities as "Defendants" does not, as a matter of law, undermine her allegations that she had a

18

subjective, good-faith belief that fraud was occurring. Defendants fail to point to a specific allegation in the Amended Complaint where this alleged deficiency causes her claim to fail for lack of protected activity. They present no case law on point. In *Fleming v. Wayne Cnty. Jail*, No. NO. 19-12297, 2023 WL 4994943, at *7 (E.D. Mich. Aug. 4, 2023), the plaintiff alleged a First Amendment retaliation claim, which failed because he did not state a plausible constitutional violation against each individual defendant, as is required for a First Amendment retaliation claim. *Id.* (citing *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012)). *Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021) is likewise uninstructive. There, the plaintiff brought an Eighth Amendment claim under § 1983. The claim similarly failed because in § 1983 suits, plaintiffs must plead that each Government-official defendant, through their own individual actions, violated the Constitution. *Id.* The plaintiffs failed to sufficiently plead the individual involvement of each individual in the alleged constitutional violation. *Rouse*, 2021 WL 2434196, at *9. Plaintiff does not bring a First Amendment retaliation, or any other constitutional claim. And as set forth above, her Amended Complaint clearly identified the facts and circumstances giving rise to her subjective, good-faith belief that Defendants –both the two individual physicians and their two corporate entities--were engaged in fraudulent billing.

Finally, paragraph 27 of Plaintiff's First Amended Complaint does not cause Plaintiff's retaliation claim to fail for lack of a subjective, good-faith belief that fraud was occurring. To the contrary, this paragraph states that Defendants instructed

19

Plaintiff to defraud the government by billing for services as "incident-to" physician supervision when CMS's criteria for incident-to billing were obviously not met. ECF No. 11, PageID.51, ¶ 27. This paragraph states enough facts on its face to plausibly allege that Plaintiff had a subjective belief that Defendants were engaged in fraud. *Twombly*, 550 U.S. at 570. Neither *Twombly* nor Rule 8 require "heightened fact pleading of specifics". *Twombly*, 550 U.S. at 570.

Plaintiff also sufficiently pled that she had an objectively reasonable belief that Defendants were engaged in fraud. Again, Defendants fail to provide a single case where similar allegations failed to plead protected activity under the FCA. In *Mikhaeil v. Walgreens Inc.*, this Court held that the plaintiff sufficiently pled an objectively reasonable belief that fraud had occurred where she, like Plaintiff, made reports based on her first-hand observations of specific instances of concern. The Court noted that, like Plaintiff, Mikhaeil's complaint "was not based solely on office gossip. Even though Plaintiff's belief that Spencer committed Medicare fraud may have been incorrect, this does not preclude her from presenting a retaliation claim." 2015 WL 778179, at *8.

Defendants provided no legal authority holding that Plaintiff's allegations evince a lack of an objectively reasonable belief that fraud was occurring. Instead, they argue, in conclusory fashion, that Plaintiff's FCA claim should fail because in paragraph 24, Plaintiff did not specify which of the "incident-to" criteria Defendants failed to meet. This argument ignores the weight of Plaintiff's many other allegations, which clearly allege that she had an objectively reasonable belief that fraud was occurring, as well as

20

the notice-pleading standard set forth in Rule 8 and controlling case law. Plaintiff's plain statement that Defendants instructed her to defraud the government by billing for "incident-to" services that obviously did not meet the government's billing criteria states enough facts to plausibly allege that Plaintiff had a reasonable belief that Defendants were engaged in fraud.

Finally, Defendants ask the Court to make a finding of fact [1] that their actions could not have plausibly given Plaintiff an objectively reasonable belief that they were engaged in fraudulent "incident-to" billing because CMS published an "interim final rule" and "final rule" that relaxed physician supervision of "incident-to" services in select cases. Judicial notice of the materials Defendant presented to the Court regarding the criteria for "incident-to" billing [ECF 18] is not necessary or appropriate for the Court's disposition of Defendants' motion to dismiss. These documents were not referred to or attached to the pleadings and are not integral to Plaintiff's claims. Plaintiff need not prove an actual FCA violation to prevail on her retaliation claim. Defendants

---

[1] Defendants' argument that Plaintiff's First Amended Complaint should be dismissed because she streamlined her factual allegations concerning their fraudulent "incident-to" billing activity is not well-grounded in fact or law. *See* Fed. R. Civ. P. 11. Defendants appear to accuse Plaintiff of trying to conceal the assertion of false claims in her pleadings. In lieu of any evidence of such activity, including any proof Plaintiff was aware of the proffered CMS documents during her employment, they provide only their counsel's speculation. Plaintiff's initial complaint is inoperative. It is well-settled that she need not prove an actual violation of the FCA to prevail on a retaliation claim. Defendants provide no court rule, statute, or case law that supports any part of this argument. It should be disregarded.

have proffered no evidence that Plaintiff was ever made aware of these documents during her employment.

Plaintiff's awareness of these documents, their meaning and application to the facts alleged in the First Amended Complaint are in dispute and will be topics for discovery. Significantly, Defendants gloss over the obvious complexities of the CMS interim final rule and final rule on "incident-to" billing. The April 2020 interim final rule states that, given the COVID-19 pandemic, the requirement for the supervising physician's presence would be relaxed "in some cases", on a case-by-case-basis:

> "**In some cases**, **depending upon the unique circumstances of individual patients and billing physicians**, we believe that telecommunications technology could be used in a manner that would facilitate the physician's immediate availability to furnish assistance and direction without necessarily requiring the physician's physical presence in the location where the service is being furnished, such as the office suite or the patient's home." ECF No. 18-1, PageID.145 (emphasis added).

CMS expressly noted that there would still be "many" situations where remote supervision would be inappropriate:

> "…**even in the context of the PHE for the COVID-19 pandemic** and the inherent exposure risks for Medicare beneficiaries, physicians and other health care providers, we believe that **in many cases furnishing services without the physical presence of the physician in the same location would not be appropriate**…" *Id* (emphasis added).

Contrary to Defendants' assertions, the language of the interim final rule states that the requirement for in-person supervision would only be relaxed where remote physician supervision was medically indicated to reduce the risk of exposing a patient or health care provider to COVID-19:

"For the reasons discussed above, on an interim basis for the duration of the PHE for the COVID-19 pandemic…necessary presence of the physician for direct supervision includes virtual presence through audio/video real-time communications technology **when use of such technology is indicated to reduce exposure risks for the beneficiary or health care provider**. We are revising § 410.32(b)(3)(ii) to include…the presence of the physician includes virtual presence through audio/video real-time communications technology **when use of such technology is indicated to reduce exposure risks for the beneficiary or health care provider**." ECF No. 18-1, PageID.146 (emphasis added).

The November 18, 2022 "final rule" did not modify the language of the "interim rule". ECF No. 18-2, PageID.215. The CMS "fact sheet" merely provides a brief, high-level summary of the "interim rule" adopted in the November 2022 "final rule". ECF No. 18-3. In sum, for Defendants to lawfully bill for services provided "incident to" a physician supervising via audio/video real-time communications technology throughout 2022 and 2023, use of such technology must have been medically indicated in each case in order to reduce the patient or healthcare provider's risk of exposure to COVID-19. Plaintiff should be permitted discovery on her well-pled allegations to show that she had an objectively reasonable basis to believe that Defendants were engaging in fraud.

In that the meaning and factual application of the CMS documents are in dispute, it would be error to take judicial notice of the truth of the matters Defendants claim they assert. *See Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (the court cannot rely on documents at pleadings stage if there are material disputed issues of fact regarding the document); *see also Burns v. United States*, 542 F. App'x 461,

466 (6th Cir. 2013) (if there are disputed issues of fact regarding a document, it should not be considered when deciding a motion to dismiss); *see also Passa v. City of Columbus*, 123 F. App'x 694, 698 (6th Cir. 2005) (lower court erred by taking judicial notice of statements on city attorney's website regarding purpose of government program, because stated purpose of the program was a fact that could be questioned). The Court should disregard the documents.

## 2.   Plaintiff Sufficiently Pled Notice

The Sixth Circuit has never adopted the notice standard advanced by Defendants. Even before the scope of FCA protected activity was expanded, the Sixth Circuit acknowledged that "[t]hreatening to file a *qui tam* suit or to make a report to the government is one way to make an employer aware [of protected activity]. But it is not the only way." *McKenzie*, 219 F.3d at 518 (*McKenzie II*) (quoting *Yesudian*, 153 F.3d at 743). Plaintiff satisfied the notice standard by pleading that her employer knew that she had engaged in protected activity. *Mikhaeil*, 2015 WL 778179, at *8 (citing *Marlar*, 525 F.3d at 449).

In *McKenzie I,* which pre-dated the expanded definition of protected activity, the Sixth Circuit adopted the notice standard enunciated in *Mikes v. Strauss,* 889 F.Supp. 746 (S.D.N.Y.1995), which required that the plaintiff's activities give the employer reason to believe that the employee was contemplating a qui tam action against it. The Sixth Circuit agreed that an internal whistleblower's observation of inappropriate medical tests, investigation of the use of tests, and reports of her conclusions to her

employers satisfied the FCA's notice standard. *U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997), *abrogated on other grounds by United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021). *McKenzie I* held that protected activity and notice were alleged where the plaintiff pled that she brought alleged fraud to her supervisors' attention and showed them a newspaper article describing a qui tam involving similar allegations of fraud. *McKenzie*, 123 F.3d at 944.

In *McKenzie II,* the Court again held that the notice element is satisfied by evidence, or in this case, well-pled allegations that the employer had reason to believe that a qui tam was a distinct possibility or was being contemplated by the plaintiff. *McKenzie*, 219 F.3d at 517. The Court explained that the employer is on notice of protected activity when the plaintiff's complaints "set forth some connection to fraudulent or false claims against the federal government." *Id.* at 518. *See also United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 (6th Cir. 2008) (notice is satisfied where the plaintiff's complaints have some nexus to a concern about fraud on the federal government); *see also Kachaylo v. Brookfield Tp. Bd. of Trs.*, 778 F.Supp.2d 814, 820–821 (N.D. Ohio 2011) (notice satisfied where employer is given reason…to suspect that the plaintiff was contemplating a qui tam action via complaints with a nexus to a concern about fraud on the federal government); *see also Mehlman v. Cincinnati Children's Hosp. Med. Ctr.*, 2021 WL 3560571, at *5 (S.D. Ohio Aug. 11, 2021) (same).

*McKenzie II* relied on *Yesudian* for its analysis of notice. In *Yesudian*, the lower court erred by holding that the plaintiff's claim failed for lack of notice because he

"never suggested to defendant that he intended to utilize his allegations in furtherance of a False Claims Act Action" and "gave no suggestion that he was going to report the alleged improprieties to government officials". *Yesudian*, 153 F.3d at 742. Since the FCA did not require plaintiffs to know their activities could lead to a qui tam action, there could be no requirement that they suggest to their employers that they were contemplating such an action. *Id.* "What defendant must know is that plaintiff is engaged in protected activity as defined above—that is, in activity that reasonably could lead to a False Claims Act case." *Id.*

The *Yesudian* court correctly reasoned that requiring a plaintiff to advise her employer that she filed or is contemplating filing a qui tam complaint would contravene § 3730(b) of the Act itself, which dictates that such complaints be filed *in camera*, remain under seal for at least sixty days, and not be served until the court orders. Requiring a plaintiff to tip off their employer to enjoy whistleblower protection would frustrate Congress's obvious concern with "tipping off investigation targets" at "a sensitive stage". *Id.* at 743 (quoting S. REP. NO. 99–345, at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289). Just as the FCA does not require plaintiffs to make an outside complaint to engage in protected activity, plaintiffs cannot be required to advise of or threaten such a complaint. *Id.* In addition to undermining the current standard for protected activity, such a requirement would undercut the statutory purpose of encouraging employees to expose fraud by requiring them to create the kind of adversary confrontation that mere internal reporting does not. *Id.* (quoting S. REP. NO. 99–345, at 4-5, 34, *reprinted in* 1986

26

U.S.C.C.A.N. at 5289). *See also Mikes,* 889 F.Supp. at 753 (S.D.N.Y.1995) ("To insist upon an express or even an implied threat of such action would impose a requirement which is wholly unrealistic in an employment context.").

The *Yesudian* court held that "merely grumbling to the employer about job dissatisfaction or regulatory violations" did not constitute notice because such activity was not protected by the FCA. *Yesudian,* 153 F.3d at 743. In other words, when an employee voices complaints with no nexus to fraud against the government, the employer lacks notice. *U.S. ex rel. Lockyer v. Hawaii Pac. Health*, 490 F. Supp. 2d 1062, 1085 (D. Haw. 2007), *aff'd in part sub nom. U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Emps. of Hawaii Pac. Health*, 343 F. App'x 279 (9th Cir. 2009).

The Court's analysis of the notice standard in *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 567 (6th Cir. 2003) is not instructive here and does not appear to be correct in light of the 2009 amendments to § 3730(h). In *Yuhasz,* the plaintiff's retaliation claim failed for lack of notice because the concerns he raised were entirely within the scope of his duties as laboratory manager. *Yuhasz,* 341 F.3d at 567. The Court then held that employees like Yuhasz, whose main job duties "charged" them with "investigating potential fraud" "must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." *Id.* at 568 (internal quotation omitted) (emphasis added). Unlike the plaintiff in *Yuhasz,* Plaintiff did not plead that her main job duties required her to investigate potential fraud.

Moreover, as this Court held in *Mikhaeil*, the notice standard set forth by the *Yuhasz* Court no longer appears correct considering the 2009 amendments to the definition of protected activity. Because the FCA no longer requires that protected conduct be "in furtherance of an action under this section" and now encompasses any "effort to stop 1 or more violations of this subsection", including internal reporting to supervisors "whether or not such steps are clearly in furtherance of a potential or actual qui tam action", the notice standard cannot require employees to make clear their intentions of bringing or assisting in an FCA action. *Mikhaeil*, 2015 WL 778179 at *8-9 (quoting 31 U.S.C. 3730(h)(1); 155 Cong Rec. E1295–03, at E1300); *see also Jones–McNamara*, 2014 WL 1671495, at *4 (S.D.Ohio Apr.28, 2014) ("What does not remain correct in regard to the May 2009 version of the statutory scheme is *Yuhasz's* requirement that the employer knew that the employee was doing more than her job by bringing or furthering an FCA case."); *Manfield v. Alutiiq Int'l Solutions, Inc.,* 851 F.Supp.2d 196, 204 (D.Me.2012) ("Since a plaintiff now engages in protected conduct whenever he engages in an effort to stop an FCA violation, the act of internal reporting itself suffices as both the effort to stop the FCA violation and the notice to the employer that the employee is engaging in protected activity."). By pleading that she reported her concerns with fraud directly to the Defendant physicians and their practice managers, Plaintiff satisfied the notice requirement. *Mikhaeil*, 2015 WL 778179, at *9 (E.D. Mich. Feb. 24, 2015).

Defendants chiefly rely on non-binding authority. *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 877 (6th Cir. 2021), *cert. denied sub nom. Sheoran v. Walmart Stores E., LP*, 142 S. Ct. 1210, 212 L. Ed. 2d 217 (2022) is an unpublished Sixth Circuit opinion. Unpublished decisions of the Court of Appeals are not binding authority. *In re Blasingame*, 986 F.3d 633, 637, n.2 (6th Cir. 2021). *Cephas-Hill v. Linden Med. Ctr./Mid-Ohio Fam. Prac. Assocs.*, 2022 WL 5177771, at *5 (S.D. Ohio Aug. 2, 2022) is also not binding authority.

The reasoning set forth in both non-precedential cases is critically flawed. *Wal-Mart*'s holding is not controlling authority, and as it derives directly from *Yuhasz*, may be disregarded for the same reasons set forth in *Mikhaeil*. In addition to ignoring the current definition of protected activity, *Wal-Mart* also appears to misapprehend the holding in *Yuhasz*, incorrectly asserting that it stands for the proposition that "[e]ven when an employee tells their employer that they have witnessed illegal conduct and that other companies have incurred FCA liability for similar conduct, that fails to establish that an employee is pursuing an FCA action." *Wal-Mart Stores E., LP*, 858 F. App'x at 880 (citing *Yuhasz*, 341 F.3d at 567).

In *Yuhasz*, the plaintiff failed to put his employer on sufficient notice because he was "simply performing his ordinary duties as a supervisor of laboratory testing" when he told his employer that its certifications were "illegal". *Yuhasz*, 341 F.3d at 567. Under these unique circumstances and a now-inoperative definition of protected activity, "[t]he mere fact that Yuhasz told [his employer] that its certifications of compliance

29

were 'unlawful and illegal' does not establish notice." *Id.* *Wal-Mart* fails to account for the fact that *Yuhasz* analyzed notice in a unique employment context where the plaintiff's everyday duties required him to make the reports he relied on as protected activity. *Id.* It is undisputed that such circumstances are not present in this case.

*Wal-Mart* is also distinguishable from this case in other important respects. The plaintiff in *Wal-Mart*, a pharmacist, brought a qui tam claim based on his assertion that medical providers had presented prescriptions to him to be filled for dangerously high doses of opiates. Plaintiff has not brought a qui tam claim here. The qui tam claim failed in *Wal-Mart* because the plaintiff failed to plead any facts indicating that the claims at issue were false, or that his employer knew the prescriptions at issue were illegal, false, or fraudulent. *Wal-Mart Stores E., LP*, 858 F. App'x at 879. In other words, the plaintiff never complained about fraud within the meaning of the FCA. This, in turn, meant that his employer lacked notice, because his complaints were unconnected to fraudulent or false claims against the federal government. *Id.* at 880 (quoting *McKenzie II*, 219 F.3d at 518). In sharp contrast, Plaintiff pled that she made reports to her supervisors that squarely satisfy the post-FERA definition of protected activity.

The opinion in *Cephas-Hill v. Linden Med. Ctr./Mid-Ohio Fam. Prac. Assocs.* is also critically flawed, non-binding authority. 2022 WL 5177771, at *5 (S.D. Ohio Aug. 2, 2022). *Cephas-Hill* relies on a reference that the *Wal-Mart* opinion made to *Yuhasz* and *McKenzie II*, in which the *Wal-Mart* Court stated that when "an employee tells their employer that they have witnessed illegal conduct and that other companies have

incurred FCA liability for similar conduct, that fails to establish that an employee is pursuing an FCA action." *Wal-Mart*, 858 F. App'x at 880 (citing[2] *Yuhasz*, 341 F.3d at 567 and *McKenzie II*, 219 F.3d. at 518).

First, the *Cephas-Hill* court failed to consider that *Yuhasz* examined the notice standard in the specific context of an employee whose job duties charged them with reporting fraud, and disregarded the fact that *Yuhasz* was decided under a pre-2009 definition of protected activity. Second, the *Cephas-Hill* and *Wal-Mart* decisions fail to account for the complexities of *McKenzie II*'s holding as to notice. *Wal-Mart* noted that the relevant holding in *McKenzie II* was that "telling an employer about their alleged regulatory violations was not sufficient to satisfy this requirement." Or in other words, notice of complaints that did not constitute protected activity is insufficient. *Wal-Mart*, 858 F. App'x at 880 (quoting *McKenzie*, 219 F.3d at 518 (*McKenzie II*)). But both *Cephas-Hill* and *Wal-Mart* ignore the significance of *McKenzie II*'s procedural posture.

In *McKenzie I*, the Sixth Circuit held that notice was sufficiently alleged where the plaintiff pled that she brought alleged fraud to her supervisors' attention and showed them a newspaper article describing a qui tam involving similar allegations of fraud. *McKenzie*, 123 F.3d at 944. *McKenzie II* did not disturb this holding. Rather, in *McKenzie II*, the Court held that under Rule 56's summary judgment standard, the plaintiff failed to adduce sufficient evidence of this allegation. The newspaper article in question did

---

[2] The *Cephas-Hill* opinion incorrectly states that *Wal-Mart* "quotes" this sentence from *Yuhasz*, but this is not the case.

not, in fact, relate to a qui tam action, or fraud against the federal government, but instead discussed a state government consumer fraud investigation. *McKenzie*, 219 F.3d at 517–18. As a result, the retaliation claim failed for lack of protected activity and notice because the plaintiff failed to adduce evidence that her complaints

> "set forth some connection to fraudulent or false claims against the federal government. McKenzie has alleged no evidence that supports that her employer, BellSouth, was aware of her protected activity—because the evidence shows that her activities were not protected under the Act." *Id.*

*Cephas-Hill* and *Wal-Mart* ignored the fact that the lack of notice in *McKenzie II* was caused by the plaintiff's inability to adduce evidence that she had engaged in protected activity. They also ignored that *McKenzie II* held that the notice element was satisfied where internal complaints "set forth some connection to fraudulent or false claims against the federal government". *Id.* Respectfully, both courts erred in these non-binding opinions, and this Court should not rely on them here. Plaintiff's allegations that she reported her concerns about fraudulent billing directly to the Defendant physicians and their practice managers satisfies the notice element.

### 3. Plaintiff Pled a Causal Nexus Between her Protected Activity and her Termination

Plaintiff must plead that "there was a causal connection between the protected activity and the adverse action." *Scott v. Metro. Health Corp.*, 234 Fed.Appx. 341, 346 (6th Cir.2007); see also *Ickes*, 178 F. Supp. 3d at 595 (Sixth Circuit rejected a "but-for causation standard"). In *Ickes*, plaintiff established causation because she was not fired until after a meeting when she raised defendants' fraudulent activities. *Id.* at

596. Similarly, Plaintiff alleged she was fired the very day after her last complaint. During the termination meeting, Defendants stated that they were terminating Plaintiff's employment because she had engaged efforts to stop violations of the FCA.

Plaintiff does not rely on temporal proximity alone. Plaintiff alleged that Defendants suggested that she would be fired for her efforts to stop violations of the FCA when, during a meeting in which she reported fraudulent billing, Defendants told her that they "could not afford" to continue employing her if the government was not fraudulently billed for her services. ECF No. 11, PageID.51, ¶¶ 29-30. Plaintiff also alleged that her termination was directly triggered by her last report of fraud. *Id.* at ¶¶ 35-41. Plaintiff pled that on May 8, 2023, she uncovered Defendants' efforts to alter records in order to fraudulently bill and raised the issue of fraudulent billing practices to them in an email that day. *Id.* at ¶ 35. Defendants' response to was to request that she attend a meeting the next day with the Defendant physicians, during which she was fired. *Id.* at ¶ 37-41. Defendants stated that they were firing her because her efforts to stop violations of the FCA would cause their medical practices to "lose money". *Id.* at ¶¶ 39-41. Defendants' argument that these statements were "innocuous" is unsupported by law and inappropriate for determination at the pleadings stage.

In addition, as a matter of law, the timing of Plaintiff's complaints and her termination demonstrates causation. Plaintiff was fired the very day after her last complaint about fraudulent billing. Where an adverse action occurs very close in time after an employer learns of a protected activity, the temporal proximity between the

events is significant enough to be evidence causation for the purposes of satisfying the prima facie case. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008); *see also Mikhaeil*, 2015 WL 778179, at *9 (causation shown where plaintiff was terminated two weeks after making a report of Medicare fraud); *see also Dye v. Office of the Racing Comm'n,* 702 F.3d 286, 306 (6th Cir. 2012) (lapse of two months demonstrated causation, which is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity").

### D.    Plaintiff Sufficiently Pled that she Engaged in Protected Activity and Provided Sufficient Notice under the MMFCA

MCL 400.610(c)(1) does not contain language stating that an internal investigation, such as what Plaintiff alleged here, is not protected activity. The statute lists three types of conduct that are not protected activity, but internal investigations are not among them. *See* Mich. Comp. Laws Ann. § 400.610c (West) (exceptions are: employee who brought a frivolous claim; planned and initiated the conduct upon which the action is brought; or is convicted of criminal conduct arising from a violation of the act). *See Alcona Cnty. v. Wolverine Env't Prod., Inc.*, 233 Mich. App. 238, 247 (1998) (the express mention of one thing in a statute implies the exclusion of other similar things).

Additionally, the language of the MMFCA allows for an interpretation which includes internal reports to supervisors concerning actual or potential violations of the MMFCA. The MMFCA protects two kinds of activity: (1) engagement in lawful acts in

34

the furtherance of an action under the Act and (2) cooperation with or assistance in an investigation under the Act. MCL § 400.610c. The presumption of non-exclusivity arises from the term "include". Canon of statutory construction provides that the phrase "including" in § 400.610c introduces examples, not an exhaustive list of protected activity. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 15 (2012)[3].

Defendant provides no federal or Michigan case law holding that an internal investigation is not protected activity. Plaintiff satisfied the protected activity requirement by pleading that she investigated Defendants' practices that led to false claims and confronted them with her findings, which led to her termination. ECF No. 11, PageID.50, ¶¶ 23-26; PageID.51, ¶¶ 29, 32-33; PageID.52, ¶¶ 35-36. In *U.S. ex rel. Yanity v. J & B Med. Supply Co.*, 2012 WL 4811288, at *6 (E.D. Mich. Oct. 10, 2012) the plaintiff maintained an MMFCA claim past the pleadings stage based on nearly identical allegations, that the plaintiff internally investigated activities prohibited by the MMFCA. Defendants do not dispute that the billing practices Plaintiff described in her Amended Complaint, if true, would constitute fraud on the state government. *See* ECF No. 11, PageID.50, ¶ 21, 23, 24. They provide no law to the contrary. As in her FCA retaliation claim, Plaintiff's well-pled allegations of her internal investigation of Defendants'

---

[3] PDF of the publication is available online at
https://www.mobt3ath.com/uplode/book/book-67921.pdf

fraudulent billing practices and numerous reports of incidents of fraudulent billing were sufficient to put Defendants on notice of fraud on the state government.

### E.    Plaintiff's Public Policy Tort Claim is Not Preempted

Plaintiff can maintain both an FCA retaliation claim and a public policy tort claim because she has alleged that she engaged in multiple types of protected activity, some of which is protected by Michigan's public policy. Under Michigan law, there are three public policy exceptions under which an employer's discharge can violate public policy: (1) the employee is discharged in violation of an explicit legislative statement which prohibits the termination of a worker who acts in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right that is conferred by a well-established legislative enactment. *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 695-96 (1982). It is well-established that a public policy tort claim lies where, as here, "the alleged reason for the discharge of the employee was the failure or refusal to violate the law in the course of employment." *Silberstein v. Pro Golf Am., Inc.,* 278 Mich.App. 446, 452 (2008).

Plaintiff pled that she was fired because she failed and refused to violate the law by fraudulently billing the government for her medical services. If Plaintiff can establish that she was terminated for refusing to violate the FCA or MMFCA during her employment, an independent, valid public policy tort claim exists. *Yanity*, 2012 WL

4811288, at *7 (holding plaintiff's public policy tort claim was not preempted by the FCA and MMFCA). Defendants have provided no legal authority to the contrary.

## III.   CONCLUSION

Plaintiff sufficiently pled the legal elements of each of her claims. Further amendment is not necessary for Plaintiff to meet the pleadings standard in this case, but she requests leave to amend in the event the Court finds otherwise. Defendants' Motions should both be dismissed in their entirety.

Dated: October 20, 2023

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
msavage@deborahgordonlaw.com
