# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JULIA ZIMMERMAN,
    *Plaintiff*,

vs.

ELIZABETH A. PENSLER, D.O., PLLC, *et al.*
    *Defendants*.

Case No. 2:23-cv-11634-NGE-APP

**Judge**: Hon. Nancy G. Edmunds
**Mag. Judge**: Hon. Anthony P. Patti

| **DEBORAH GORDON LAW** | **THE HEALTH LAW PARTNERS, P.C.** |
|---|---|
| Deborah L. Gordon (P27058) | Clinton Mikel (P73496) |
| Elizabeth Marzotto Taylor (P82061) | *Attorneys for Defendants* |
| Sarah Gordon Thomas (P83935) | Elizabeth A. Pensler, D.O., PLLC (d/b/a "Pensler Vein and Vascular "Pensler Vein and Vascular Surgical Institute", and "Elizabeth Face + Body Med Spa"); Elizabeth Med Spa, PLLC Derek L. Hill, D.O., PLLC; (d/b/a "Hill Orthopedics"), Elizabeth Pensler, D.O. and Derek Hill, D.O. |
| Molly Savage (P84472) | |
| Attorneys for Plaintiff | |
| Julia Zimmerman | |
| 33 Bloomfield Hills Parkway, Suite 220 | |
| Bloomfield Hills, Michigan 48304 | 32000 Northwestern Hwy |
| Tel: (248) 258-2500 | Suite240 |
| dgordon@deborahgordonlaw.com | Farmington Hills, MI 48334 |
| emarzottotaylor@deborahgordonlaw.com | Tel: (248) 996-8510 |
| sthomas@deborahgordonlaw.com | cmikel@thehlp.com |
| msavage@deborahgordonlaw.com | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## INTRODUCTION

Defendants submit this Reply under Fed. R. Civ. P. 12(b)(6) in support of Defendants' Motion to Dismiss the First Amended Complaint ("**Motion to Dismiss**" or "**MTD**") [ECF No. 19].

Plaintiff's Omnibus Response to Motion Requesting Judicial Notice [ECF No. 18] and Motion to Dismiss [ECF No. 19] ("**Response**") [ECF No.23] regurgitates the same unsupported legal conclusions contained in the First Amended Complaint ("**FAC**") [ECF No. 11], without curing the critical deficiencies raised in Defendants' Motion to Dismiss.

## LAW AND ARGUMENT

### I. PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM

The first step in assessing the validity of a 12(b)(6) motion to dismiss is to identify any conclusory allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although the Court must accept well-pleaded factual allegations of the complaint as true at the motion-to-dismiss stage, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a plausible

claim for relief]." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While well-plead facts must be accepted as alleged, this does not automatically extend to "bald assertions, subjective characterizations, and legal conclusions…The factual allegations must be specific enough to justify 'dragging a defendant past the pleading threshold.'" *Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 73 F. Supp. 2d 829, 832 (W.D. Mich. 1999), aff'd, 244 F.3d 521 (6th Cir. 2001). If a plaintiff does "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 555.

### A. Plaintiff Fails to State a Claim for Retaliation Under the False Claims Act

To plead they were engaged in a protected activity, a plaintiff must allege conduct directed at stopping what was reasonably believed to be fraud committed against the federal government. *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 F. App'x

787, 789 (6th Cir. 2017). To be a protected activity, internal reports must "***allege fraud on the government***." *Id.* (emphasis added). Internal reports of government fraud can qualify as protected activity ***only if*** they "specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct." *Mikhaeil v. Walgreens Inc.,* No. 13-14107, 2015 WL 778179 (E.D. Mich. Feb. 24, 2015).

    i.    **Plaintiff Did Not Engage in a Protected Activity**

To succeed on a FCA retaliation claim, a plaintiff must show/plead that: (1) she engaged in a protected activity ; (2) the employer knew she engaged in the protected activity; and (3) the employer discharged or otherwise discriminated against the employee as a result of the protected activity. *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 Fed. Appx 787, 789 (6th Cir. 2017); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)).

Plaintiff's Response places a heavy emphasis and reliance on the expanded scope of "protected activity" under The Fraud Enforcement and Recovery Act of 2009, stating specifically that "protected activity should…be interpreted broadly." [ECF No. 23, PageID.302]. However, courts have made clear that for a plaintiff to successfully allege a claim under Section 3730(h), plaintiff's allegations must have grown out of a ***reasonable*** belief that there was fraud, comprising both her own ***subjective*** good-faith belief, ***and*** an objectively reasonable belief, showing that a ***reasonable*** employee in the same or similar circumstances might also believe that the

employer was engaged in fraud. *Jones-McNamara v. Holzer Health Sys.*, 630 Fed. Appx. 394, 398-400 (6th Cir. 2015) (emphasis added). An objectively reasonable belief requires facts that exist independently of the plaintiff's personal, interior mentality. *Id.* See also *Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, No. 2:09-CV-11657, 2016 WL 4592177 at *3 (E.D. Mich. Mar. 22, 2016) (citing *McKenzie*, 630 Fed.Appx. at 404) (internal complaints alleging fraud against the government must be based on beliefs genuinely held by the employee that are objectively reasonable).

### *Plaintiff's Grumblings Are Not Protected Activity, and Her Bald Assertions/Legal Conclusions Are Implausible*

Plaintiff's Response refers to the actions of Defendants as "fraud," "fraudulent," or "fraudulently" a staggering ***118 times*** in her Response. However, Plaintiff never once provides any specific information in her FAC to support these conclusions. Rather, Plaintiff intermingles partial alleged-quotes, lacking any context, and "frankensteins" them together with counsel's conclusory assertions, attempting to create a factual dispute at odds with her FAC. For example, Plaintiff alleges throughout the FAC and Response that she had email correspondence with Defendants allegedly addressing fraudulent actions:

- Plaintiff alleges that she "she told the Defendant physicians by email that she would not engage in fraudulent billing";[1]
- Plaintiff alleges that she "sent an email stating that she continued to have

---

[1] *Id.* at PageID.304.

4

concerns about Defendants engaging in fraudulent billing practices";[2] and

- Plaintiff alleges that "after catching Defendant Pensler falsifying records in order to fraudulently bill for Plaintiff's medical services, she emailed Defendants on May 8, 2023, exposing the violation and communicating her efforts to stop it."[3]

However, a review of these emails paints a completely different story. For example, Plaintiff pleads she sent a "May 8, 2023, email to Defendants Pensler and Hill, stating that she refused to fraudulently bill for her services." (ECF No. 11, PageID.52, ¶ 36). As Defendants stated in their Motion Requesting the Court to Take Judicial Notice, this Court can consider the May 8, 2023, emails that are referenced in and are integral to the FAC.[4] The email states:

> Good morning. Following up on my email below, as I have not heard a response. It's my understanding that we are now able to indicate the PA as the servicing provider in EPIC via the appointment itself by changing the provider, and/or in the charge capture when applicable. Moving forward, in order to ensure that I'm in compliance with proper billing and to be able to continue with my position, I will be modifying this when appropriate. We will need to review this with staff as well. Thank you,
> …
> Good morning, I wanted to follow up as I continue to be concerned about the process of billing in the physician's name regardless of insurance carrier or servicing

---

[2] *Id.* at PageID.308.
[3] *Id.*
[4] The Court can consider documents referenced in and that are integral to Plaintiff's complaint, and not transform the motion into one for summary judgment. *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999).

> provider, and my personal professional liability. As we aren't able to meet the incident to criteria, I'd like to continue to discuss what we should do when a patient is seen by me. I appreciate everyone's consideration.
>
> Thanks,
>
> Also, please let me know if you would like me to leave those notes open for Dr Pensler/Dr Hill to review and sign, review and mark as ready for me to sign, or if I should sign them and route them for review.
>
> (Emails of May 8, 2023, at 9:07 a.m. and 11:34 a.m).

Nothing in these emails or (or what is plead) would alert a reasonable person that Plaintiff was complaining about fraud on the government in any kind of way.

Unsurprisingly, Plaintiff seeks to prevent the Court from considering her emails – **emails which Plaintiff specifically referenced in the FAC** – because they are at odds with Plaintiff's conclusory allegations. Rather, Plaintiff's emails are properly described as "mere grumblings" to her employers about job dissatisfaction or alleged insurer billing requirements. Not only do these emails not qualify as "protected activity," but they fail to indicate Defendants were put on notice as required under the FCA. See *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 518 (6th Cir. 2000) (a plaintiff must show that his employer was aware of his protected activity. Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement—just as it does not constitute

protected activity in the first place).

Plaintiff's strategy of arguing unsupported conclusory allegations as factual pleadings from the FAC also extends to alleged in-person conversations:

- Plaintiff states that she was told by Defendants that they "could not afford" to employ her if she refused to fraudulently bill the government for services.[5]
- Plaintiff alleges that Defendants told her "they could not afford to employ her if she refused to fraudulently bill the government for services" and that they were "clawing back income" by "fraudulently billing."[6]
- Plaintiff claims that Defendants told her the practice would "lose money" if she lawfully billed for her services as a physician assistant.[7]

Plaintiff mixes purported quotations by unnamed Defendants with Plaintiff's personally formed legal conclusions to create an illusion that Defendants' self-admitted to fraud. Plaintiff's assertions are belied by her own emails, and are simply unbelievable. This Court is not required to, and should not, accept Plaintiff's legal conclusions as factual assertions. *Twombly,* 550 U.S. at 555.

Plaintiff's allegations again include no specific factual support, such as what (if anything) was actually said, to whom these conversations were with, and they contain absolutely no specific information about how Defendants' actions were fraudulent or even improper. Plaintiff's conclusory pleadings give neither Defendants nor this Court any notice as to Plaintiff's actual claims. This lack of specificity not only fails to

---

[5] ECF No. 11, PageID.51, ¶ 30
[6] *Id.*
[7] *Id.*, at PageID.52-53, ¶ 41.

reach the required notice threshold under the FCA, but ultimately makes it impossible for Defendants to rebut these allegations. See *Twombly,* 550 U.S. at 555 ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.").

Plaintiff spends approximately **fourteen** pages citing to case law regarding what is a protected activity. However, much of what Plaintiff cites is unpublished and even non-controlling case law. Even then, the cases Plaintiff relies on are all distinguishable from the instant matter. Simply, in the cases cited by Plaintiff, the plaintiffs' *pled facts with articulable specificity* and in less conclusory fashion! For example, Plaintiff cites *Mikhaeil v. Walgreens Inc.*, No. 13-14107, 2015 WL 778179 (E.D. Mich. Feb. 24, 2015) in support of her claims that she engaged in a protected activity. However, this reliance is misguided. In *Mikhaeil*, this Court evaluated a circumstance where the plaintiff allegedly made numerous complaints to her superiors regarding regulatory violations. The plaintiff in *Mikhaeil* specifically pled details which are conspicuously absent here – *e.g.*, each and every complaint, including the date, a summary of the purported violations, the actual identity of the violators, and the specific actions making up the concerned fraudulent behavior. *Mikhaeil*, 2015 WL 778179 at *7-8.

The only specific factual support Plaintiff references in the instant matter are,

ironically, the very emails she has sought to keep out the Court's eyes. The simple reason for this is that the emails fall well short of the plaintiff's actions in *Mikhaeil*. While the plaintiff in *Mikhaeil* pled specific and articulable instances of purported fraud, as well as the exact nature of her conduct in reporting her concerns to her superiors, Plaintiff in the instant matter has pled none of the specific information as the plaintiff in *Mikhaeil*.

### *Plaintiff Did Not Have a Good-Faith Belief That Defendants Were Engaged in Fraud*

Plaintiff claims that she had subjective and objectively good-faith belief that Defendants were engaged in fraud because "Defendants instructed Plaintiff to defraud the government by billing for services as 'incident-to' physician supervision when CMS's criteria for incident to billing were obviously not met."[8] ***What criteria was not met***? As pointed out in the MTD, the Original Complaint had specifics that were *removed* from the FAC – namely, in the Original Complaint, Plaintiff stated that Defendants were not physically onsite, making incident-to billing improper. [ECF No. 19, PageID.262]. The specifics alleged in the Original Complaint, oddly removed from the FAC, reveal there could be no reasonable belief.

Defendants' MTD addressed in detail that supervision requirements were

---

[8] Response, ECF No. 23, PageID.311-312.

changed and loosened because of the COVID-19 pandemic, including permitting billing in the physician's name if the physician was available for supervision by "audio/video" means. (ECF No. 19, PageID.230, ¶5). These rules and regulations were enacted before Plaintiff began her employment, were widely publicized by the government to the world at large,[9] and have been in effect through all relevant times of this action.

Not only does Plaintiff fail to address this in any way in her Response, but she specifically is seeking to have the Court ignore and disregard official CMS rules and regulations.[10] Plaintiff attempts to exclude these Rules and Regulations by arguing that "[N]either Fed. R. Civ. P. 12(b)(6) nor Fed. R. of Evid. 201 permit the courts to take judicial notice of disputed facts purportedly contained in exhibits to a motion to dismiss for the truth of the matters asserted." [ECF No. 23, PageID.299].

Laws/regulations are not facts. Plaintiff's Original Complaint stated that Defendants' billings were fraudulent because they were not physically present. [ECF No. 1, PageID. 7-8]. Plaintiff's FAC does not say why billings were unlawful,

---

[9] There is no reasonable argument that *even lay persons* were unaware that wide-sweeping changes had been made to healthcare regulatory requirements to address the Covid-19 pandemic.

[10] Defendants have addressed Plaintiff's oppression argument in detail in their Reply to Plaintiff's Motion in Opposition to Judicial Notice (filed concurrently).

just that they were, in a conclusory fashion. Plaintiff provides no further explanation or specific argument for why government billing rules and regulations – which explicitly cover CMS billing requirements – should not be allowed to be included with Defendants' Motion to Dismiss. Plaintiff attempts this because if this Court reviewed the referenced interim final rule, the foundation of Plaintiff's entire action would crumble. Put differently, Plaintiff could not have had either a subjective or a reasonable belief that Defendant's purported billing was improper. See *Jones-McNamara*, 630 Fed.Appx. at 404, (the relevant inquiry to determine whether an employee's actions are protected under § 3730(h) is whether: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.") (citations omitted).

    Plaintiff alleges a legal conclusion that billing procedures and practices of Defendants were "fraudulent" and "improper" because Defendants were not physically present, yet the Covid-19 rules/regulations cited in Defendants' MTD prove this is not the case. Plaintiff appears to be aware of this fatal fact,[11] and thus is seeking to keep the truth coming to light by moving from pleading with specificity

---

[11] Underscoring this is the oddity of Plaintiff bringing a False Claims Act "retaliation" action without the underlying corollary False Claims Act action.

in the Original Complaint to generalized pleading in her FAC.

Plaintiff entirely disregarded this MTD argument in her Response. There is no logical argument to be made which would portray Plaintiff's deliberate ignorance to the revised rules and regulations as objectively reasonable. No reasonable employee in such a highly regulated industry would completely disregard major changes that affect the very way they do their job. Because Plaintiff failed to meet the reasonableness test in *Jones-McNamara,* her claim for retaliation must be dismissed.

B. **Plaintiff Fails to Plead a Claim Under the MMFPA**

This Court addressed an identical issue to the one at hand in *Mikhaeil*, wherein a plaintiff pled causes of action for retaliation under both the FCA and the MMFCA. As in the instant case, the plaintiff in *Mikhaeil* argued that the MMFCA "should be interpreted in the same way as the FCA due to its similar language." 2015 WL 778179 at *11. However, this Court correctly rejected that argument, stating that:

> Although this argument might be persuasive as it relates to the language that the two statutes have in common, there is no reason to believe that the MMFCA should be interpreted to protect "other efforts" to stop violations of the act as the FCA does. This language was crucial in determining that Plaintiff could establish a prima facie case of retaliation under the FCA. Because the MMFCA does not protect "other efforts," Plaintiff cannot establish a prima facie case of retaliation under the MMFCA.

*Id.*

This Court made clear that the plain language of the MMFCA requires a plaintiff to initiate, assist in, or participate in the furtherance of an action under this act, or cooperate with or assist in an investigation under this act. Plaintiff has pled no specific facts to differentiate this action from *Mikhaeil*, and as such dismissal of the MMFCA claim is warranted.

### C. Plaintiff's Public Policy Claim is Preempted

The law is clear that "'[a] public policy claim is sustainable … only where there is also not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.'" *Mikhaeil*, 2015 WL 778179 at *12. If the facts giving rise to a plaintiff's public policy cause of action are the same as those giving rise to her causes of action under the FCA, a plaintiff cannot bring a claim for termination in violation of public policy. *Id*.

Plaintiff's Response specifically states that her "unwillingness" and "refusal" to participate in the alleged fraudulent actions of Defendants constituted "protected activities" and served as the basis for her retaliation claim under the FCA. *See* ECF No. 11, PageID.51-52, ¶ ¶ 30, 36. As the FAC alleges the same facts giving rise to Plaintiff's public policy account also give rise to potential violations of the FCA retaliation provisions, Plaintiff's claim under Michigan public policy is preempted and should be dismissed.

## CONCLUSION

For the above reasons, Defendants ask this Court to dismiss Plaintiff's First Amended Complaint with prejudice and assess attorney's fees and costs as appropriate.

**Dated**: November 7, 2023,

Respectfully submitted,
**THE HEALTH LAW PARTNERS, P.C.**

/s/ Clinton Mikel
Clinton Mikel, (P73496),
*Attorney for Defendants*
*Elizabeth A. Pensler, D.O., PLLC, et al*
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
Phone (248) 996-8510
Fax (248) 996-8525
cmikel@thehlp.com

# **CERTIFICATE OF SERVICE**

      I certify that on November 7, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.

                                    /s/ Clinton Mikel
                                    Clinton Mikel, (P73496),
                                    *Attorney for Defendants*
                                    *Elizabeth A. Pensler, D.O., PLLC, et al*
                                    32000 Northwestern Hwy., Suite 240
                                    Farmington Hills, MI 48334
                                    Phone (248) 996-8510
                                    Fax (248) 996-8525
                                    cmikel@thehlp.com

4871-1691-3293, v. 6