UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA ZIMMERMAN,

       Plaintiff,                             No. 23-11634

v.

                                         Honorable Nancy G. Edmunds

ELIZABETH A. PENSLER, D.O., PLLC, *et al.*,

       Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO TAKE JUDICIAL NOTICE [18] AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [19]**

       Plaintiff Julia Zimmerman brings retaliation claims under the False Claims Act ("FCA") and Michigan Medicaid False Claims Act ("MMFCA") and alleges termination in violation of Michigan public policy against her former employer, Elizabeth A. Pensler, D.O., PLLC; Elizabeth Med Spa, PLLC; Derek L. Hill, D.O., PLLC; Elizabeth A. Pensler, D.O.; and Derek L. Hill, D.O. (collectively, "Defendants"). (ECF No. 11.) The matter is before the Court on two motions: 1) Defendants' motion requesting the Court to take judicial notice (ECF No. 18) and 2) Defendants' motion to dismiss Plaintiff's claims for failure to state a claim (ECF No. 19). Both motions are fully briefed. (ECF Nos. 23, 25, 26.) Under Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided without oral argument. For the reasons below, the Court DENIES the motion to take judicial notice and DENIES IN PART and GRANTS IN PART the motion to dismiss.

**I.      Background**

       Plaintiff is a Physician Assistant and started her employment with Defendants in October 2022. Plaintiff states that her job duties included reviewing patients' medical

histories, consulting with and examining patients, providing treatments, conducting procedures, diagnosing patients' conditions, and ordering diagnostic tests.

Defendants are medical providers, who bill insurance providers for their services, including state and federal Medicare and Medicaid programs. As set forth in Plaintiff's amended complaint (ECF No. 11), under Centers for Medicare & Medicaid ("CMS") guidelines, services solely provided by physician assistants are typically reimbursed at a reduced rate of 85% of the CMS fee schedule amount for the value of the services but there is an exception to this general rule for services performed by a physician assistant that are provided "incident-to" the services of a physician. Citing to the Medicare Benefit Policy Manual, Plaintiff avers that billing for incident-to services is only permissible if the physician conducts the patient's first appointment, creates the care plan, is on-site for any subsequent visits that the physician assistant bills for, and participates in any visits during which changes are made to the patient's care plan. Plaintiff also states that it is fraudulent to bill the government for medical services that were not performed, to misrepresent who performed the services being billed for, and to bill for incident-to services when the CMS criteria are not met.

In December 2022, Plaintiff was assigned to review Defendants' incomplete and open patient electronic medical records. Plaintiff's analysis of Defendants' records allegedly revealed that some diagnoses were being used for billing purposes that did not correspond with the diagnosis made during the patient encounter, so that the encounter could be billed to the government. Plaintiff also allegedly observed that virtually all services were being billed as if they were directly performed by Defendants Pensler and Hill, or, rarely, as incident-to services, even when the services were not performed by the

physicians, and the criteria for incident-to billing was not met. "In January and February 2023, Plaintiff reported the fraudulent billing practices as described above to Defendants." (*Id.* at PageID.50.) "In March 2023, Defendants instructed Plaintiff to bill for services that Plaintiff performed as if they were performed by the Defendant physicians or 'incident to' the Defendant physicians where this was not the case. This was unlawful." (*Id.* at PageID.51.) In mid-March 2023, Plaintiff emailed Defendants and stated that their instructions did not comport with CMS criteria for billing, but she did not receive a reply. "On or about March 23, 2023, Plaintiff met with Defendants Pensler and Hill and complained that Defendants were fraudulently billing for Plaintiff's and other physician assistants' services." (*Id.*) During the meeting, Defendants allegedly told Plaintiff that they "could not afford" to employ her if she refused to fraudulently bill the government for her services. Defendants stated that billing for Plaintiff's services in accordance with CMS guidelines "wouldn't make sense" in that they would not be reimbursed at 100% of the CMS fee schedule or reimbursed at all. Defendant Hill stated that Defendants needed to "claw back income where we can." (*Id.*)

In early April 2023, Plaintiff verbally complained to one of Defendants' practice managers that Defendants were fraudulently billing for Plaintiff's and other physician assistants' services in violation of the CMS guidelines. In mid-April 2023, Plaintiff emailed Defendants that she remained concerned about fraudulent billing, including as to services provided by Plaintiff. Plaintiff received no response. On May 8, 2023, Plaintiff became aware that Defendant Pensler edited several of Plaintiff's patient charts to falsely indicate that she, not Plaintiff, was the services and billing provider for procedures solely performed by Plaintiff. Plaintiff sent an email to Defendants Pensler and Hill, stating that

she refused to fraudulently bill for her services. In response to her email, Plaintiff was asked to attend a meeting the next day. That day, Plaintiff discovered she was locked out of her ability to log into her electronic accounts. During that meeting, Plaintiff was told that her employment was being terminated. Defendant Pensler explained that they were hiring a physician to replace her. Defendant Pensler allegedly stated, "you went ahead and started changing yourself to the billing provider." (*Id.* at PageID.52.) Plaintiff responded that this had been done in accordance with CMS guidelines but was told that the practice would "lose money" if she lawfully billed for her services as a physician assistant. (*Id.* at PageID.52-53.)

## II.    Defendants' Motion for Order to Take Judicial Notice

Defendants ask the Court to take judicial notice of certain documents they then cite to in their motion to dismiss. Plaintiff argues that the facts contained in the documents are subject to dispute and cannot be judicially noticed.

### A.    Legal Standard

Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012). "Judicial notice is only appropriate if 'the matter is beyond reasonable controversy.'" *Id.* at 834 (citing Fed. R. Evid. 201(b) advisory committee's note).

### B.    Analysis

Defendants ask the Court to take judicial notice of three exhibits: 1) an interim final rule issued by CMS on April 6, 2020 entitled "Medicare and Medicaid Programs; Policy

4

and Regulatory Revisions in Response to the COVID-19 Public Health Emergency" (ECF No. 18-1); 2) an excerpt of the final rule issued by CMS on November 18, 2022 (ECF No. 18-2); and 3) a fact sheet published by CMS on February 27, 2023 entitled "CMS Waivers, Flexibilities, and the Transition Forward from the COVID-19 Public Health Emergency" (ECF No. 18-3).

While Defendants are correct that courts may take judicial notice of documents of public record, judicial notice simply allows "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). Here, Defendants ask the Court to take judicial notice of these exhibits in support of their argument that Plaintiff did not have an objectively reasonable belief that fraud was being committed against the government, which is an element of her retaliation claim as will be discussed below. This suggested use involves consideration of the truth of the matters asserted in the documents and is therefore not a permissible use at the motion to dismiss stage of the case. Thus, the Court declines to take judicial notice of Defendants' exhibits.

## III.     Defendants' Motion to Dismiss

Defendants move for dismissal of all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Alternatively, Defendants ask the Court to dismiss Plaintiff's federal claim and decline to exercise supplemental jurisdiction over her state law claims. Plaintiff argues that all her claims should survive Defendants' motion.

### A.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**B.     Analysis**

**1.     Plaintiff has Stated a FCA Retaliation Claim.**

To establish a prima facie case under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h), Plaintiff must prove that: 1) she engaged in protected activity, 2) Defendants knew that she engaged in protected activity; and 3) Defendants discharged or otherwise discriminated against her as a result of the protected activity. *See United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008). Defendant argues that Plaintiff's allegations do not meet any of the elements of her FCA retaliation claim.

With regard to the first element, the FCA protects "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." § 3730(h)(1). An internal report to a supervisor may

6

constitute an effort under the statute. *See Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 399 (6th Cir. 2015). To be protected, however, internal reports must "specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct." *Mikhaeil v. Walgreens Inc.*, No. 13-14107, 2015 U.S. Dist. LEXIS 21682, at *20 (E.D. Mich. Feb. 24, 2015) (internal quotation marks and citation omitted). An employee need not "uncover an actual FCA violation to undertake protected activity," but her allegations of fraud must have been made in good faith and also be objectively reasonable. *See Jones-McNamara*, 630 F. App'x at 399. Defendants characterize the discussions and emails referenced in Plaintiff's amended complaint as grumbling about compliance with CMS manual guidance rather than reports about fraudulent claims being submitted to the government. Defendants also argue that any allegations of fraud did not grow out of an objectively reasonable belief that fraud was being committed.

Defendants ask the Court to consider the contents of the emails sent by Plaintiff on April 13, 2023 and May 8, 2023 in support of their argument regarding protected activity. For example, Defendants note that Plaintiff stated in her April 13 email that she was concerned about her "personal professional liability." (*See* ECF No. 19-2, PageID.272.) Plaintiff argues that the Court may not take judicial notice of these emails. But Defendants do not rely on Federal Rule of Evidence 201(b) as the basis for the emails' consideration. Instead, Defendants argue that because the emails are referenced in Plaintiff's complaint and are central to her claim, the Court may consider them without converting the motion to one for summary judgment. Even if the Court were to consider these emails, however, Plaintiff's amended complaint refers to discussions and emails

beyond those submitted to the Court, and without discovery in this matter, the contents of the remaining communications are unclear. Indeed, many of the cases relied upon by Defendants addressed FCA retaliation claims on a motion for summary judgment following a period of discovery. *See, e.g.*, *Jones-McNamara*, 630 F. App'x at 397; *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 792 (M.D. Tenn. 2010).[1] And while the underlying complaint in *Fakorede v. Mid-South Heart Ctr., P.C.*, 709 F. App'x 787, 790 (6th Cir. 2017), was dismissed at the pleading stage, there, the court found that the allegations only gave rise to an inference that the plaintiff believed there was fraud being committed against the Hospital District—a state entity. Here, Plaintiff has alleged that she believed that Defendants' billing practices did not comport with guidance from CMS—a federal agency. Thus, the Court finds that Plaintiff's allegations are sufficient to plead the protected activity element of her FCA retaliation claim.

With regard to the notice element of Plaintiff's retaliation claim, Defendants cite to *United States v. Wal-Mart Stores East, LP*, 858 F. App'x 876, 880 (6th Cir. 2021), to argue that Plaintiff did not plead facts showing that she made clear to Defendants that she intended to bring or assist in a FCA action. But that case relied on *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 568 (6th Cir. 2003), for this point. As this Court has previously noted, because "the FCA no longer requires that conduct be in furtherance of an action under this section to be protected," *Yuhasz*'s requirement that employees make clear their intentions of bringing or assisting in a FCA action no longer applies. *See*

---

[1] Also, significantly, the court in *Smith* was applying an earlier version of the statute that only protected acts done "in furtherance of an action under this section" and did not apply to "other efforts to stop 1 or more violations of this subchapter." *See Smith*, 730 F. Supp. 2d at 801 n.3.

*Mikhaeil*, 2015 U.S. Dist. LEXIS 21682, at *25-26. Here, Plaintiff alleges that she reported her concerns about fraudulent billing both verbally and via email to her supervisors. Thus, her allegations satisfy the notice element of her retaliation claim.

Finally, Plaintiff's allegations regarding both temporal proximity and statements made by her supervisors are sufficient to plead the causation element of her claim.

In sum, Plaintiff's FCA retaliation claim survives Defendants' motion to dismiss. The Court will therefore exercise supplemental jurisdiction over her state law claims.

### 2.     Plaintiff has not Stated a MMFCA Retaliation Claim.

Similar to the FCA, the MMFCA prohibits an employer from retaliating against an employee for "lawful acts, including initiating, assisting in, or participating in the furtherance of an action under this act or because the employee cooperates with or assists in an investigation under this action." Mich. Comp. Laws § 400.610c. The MMFCA, however, does not contain language protecting "other efforts" to stop a violation of the act. Because the allegations here relate to such efforts in the form of internal reports to Plaintiff's supervisors, rather than acts in furtherance of an action under the statute, Plaintiff cannot establish a prima facie case of retaliation under the MMFCA. Plaintiff's MMFCA retaliation claim is therefore dismissed.

### 3.     Plaintiff's Michigan Public Policy Claim is Preempted.

Plaintiff's third cause of action is a common law claim of wrongful discharge in violation of public policy. But Michigan law only recognizes such a claim "where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 650 (Mich. 1993). Here, the facts that give rise to Plaintiff's public policy claim are the same as those that

give rise to her FCA retaliation claim. Thus, Plaintiff cannot bring a claim for termination in violation of public policy, and her public policy claim is also dismissed.

## IV.      Conclusion

For the foregoing reasons, Defendants' motion for judicial notice is DENIED, and their motion to dismiss is DENIED IN PART and GRANTED IN PART. Plaintiff is entitled to proceed to discovery on her FCA retaliation claim.

SO ORDERED.

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated: August 20, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 20, 2024, by electronic and/or ordinary mail.

<u>s/Marlena A. Williams</u>
Case Manager