UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA ZIMMERMAN,

        Plaintiff,

vs.

ELIZABETH A. PENSLER, D.O., PLLC
(d/b/a "Pensler Vein and Vascular",
"Pensler Vein and Vascular Surgical
Institute", and "Elizabeth Face +
Body Med Spa") *et al.,*

        Defendants.

Case No. 2:23-cv-11634

Judge: Hon. Nancy G. Edmunds
Magistrate Judge:
Hon. Anthony P. Patti

| **DEBORAH GORDON LAW** | **THE HEALTH LAW PARTNERS, P.C.** |
|---|---|
| Deborah L. Gordon (P27058) | |
| Elizabeth Marzotto Taylor (P82061) | Clinton Mikel (P73496) |
| Sarah Gordon Thomas (P83935) | Mark V. Breaugh (P84626) |
| *Attorneys for Plaintiff* | *Attorneys for the Defendants* |
| 33 Bloomfield Hills Parkway, Suite 220 | 32000 Northwestern Highway, |
| Bloomfield Hills, Michigan 48304 | Suite 240 |
| (248) 258-2500 | Farmington Hills, MI 48334 |
| dgordon@deborahgordonlaw.com | Tel: (248)996-8510 |
| emarzottotaylor@deborahgordonlaw.com | cmikel@thehlp.com |
| sthomas@deborahgordonlaw.com | mbreaugh@thehlp.com |

### DEFENDANTS' MOTION FOR
### SUMMARY JUDGMENT

Defendants, Elizabeth A. Pensler, D.O., PLLC (d/b/a "Pensler Vein and

Vascular", "Pensler Vein and Vascular Surgical Institute", and "Elizabeth Face +

Body Med Spa"); Elizabeth Med Spa, PLLC; Derek L. Hill, D.O., PLLC (d/b/a "Hill Orthopedics"); Elizabeth Pensler, D.O. ("Dr. Pensler"); and Derek Hill, D.O. ("Dr. Hill") (collectively, "**Defendants**") by and through their counsel, The Health Law Partners, P.C., and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move for Summary Judgment against Plaintiff, Julia Zimmerman, on her sole remaining claim. As demonstrated in Defendants' Brief in Support, which is filed concurrently herewith, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's remaining claim.

**WHEREFORE,** Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment, dismiss Plaintiff's First Amended Complaint with prejudice, and award Defendants their costs as the prevailing party, and all other relief as appropriate and just.

**Dated**: April 18, 2025,                          Respectfully submitted,
                                                     **THE HEALTH LAW PARTNERS, P.C.**

                                                     /s/ Clinton Mikel
                                                     Clinton Mikel, (P73496),
                                                     Attorney for Defendants
                                                     32000 Northwestern Hwy., Suite 240
                                                     Farmington Hills, MI 48334
                                                     Phone (248) 996-8510
                                                     cmikel@thehlp.com

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JULIA ZIMMERMAN,

        Plaintiff,

vs.

ELIZABETH A. PENSLER, D.O., PLLC
(d/b/a "Pensler Vein and Vascular",
"Pensler Vein and Vascular Surgical
Institute", and "Elizabeth Face +
Body Med Spa") *et al.,*

        Defendants.

Case No. 2:23-cv-11634

Judge: Hon. Nancy G. Edmunds
Magistrate Judge:
Hon. Anthony P. Patti

| | |
|---|---|
| **DEBORAH GORDON LAW**<br>Deborah L. Gordon (P27058)<br>Elizabeth Marzotto Taylor (P82061)<br>Sarah Gordon Thomas (P83935)<br>*Attorneys for Plaintiff*<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com<br>sthomas@deborahgordonlaw.com | **THE HEALTH LAW PARTNERS,<br>P.C.**<br>Clinton Mikel (P73496)<br>Mark V. Breaugh (P84626)<br>*Attorneys for the Defendants*<br>32000 Northwestern Highway,<br>Suite 240<br>Farmington Hills, MI 48334<br>Tel: (248)996-8510<br>cmikel@thehlp.com<br>mbreaugh@thehlp.com |

## <u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

i

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES PRESENTED ............................................................ iv

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

STANDARD OF REVIEW ................................................................................... 5

ARGUMENT ......................................................................................................... 6

I.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION
     UNDER THE FALSE CLAIMS ACT ........................................................... 6

A.   Plaintiff Did Not Engage in a Protected Activity ...................................... 7

B.   Plaintiff Did Not Provide Notice of Her Alleged Complaints to Defendants ........ 12

C.   Plaintiff Cannot Demonstrate a Causal Connection ................................. 14

D.   Plaintiff's Termination Was Based on Legitimate, Non-Retaliatory Grounds ....... 16

II.  DEFENDANTS ARE NOT "EMPLOYERS" UNDER THE FALSE CLAIMS ACT .. 18

A.   Plaintiff Has Failed to Name Her Actual Employer ................................. 18

B.   The Individual Defendants Are Not Subject to Liability Under the Retaliation
     Provision of the FCA ................................................................................. 20

III. EVEN IF LIABILITY WERE FOUND, PLAINTIFF'S DAMAGES ARE LIMITED
     AS A MATTER OF LAW ............................................................................. 21

A.   Back-Pay Under the FCA Must Reflect Actual Economic Loss, with Interim
     Earnings Deducted *Before* Applying the Statutory Multiplier ............... 21

B.   Punitive Damages Are Not Recoverable Under the FCA's Retaliation Provision . 23

VII. CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)............. 5

*Celotex Corp.*, 477 U.S. at 322-23 .................................................................................. 6

*Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 Fed. Appx 787, 789 (6th Cir. 2017) ..................... 6

*Gage v. Michigan Dep't of Health & Hum. Servs.*, 2023 WL 6394068 (WD Mich. 2023) ..... 20

*Grant on behalf of United States v. Zorn*, 107 F.4th 782 (8th Cir. 2024)................................. 23

*Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886 (8th Cir. 2000)........................ 22

*Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010) .................................................. 14, 15

*Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016)........................................................ 20

*Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 399 (6th Cir. 2015) ............. 6, 8

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)............. 5

*McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508 (6th Cir. 2000)............... 7, 12, 14, 18

*Miller v. Abbott Labs.*, 648 F. App'x. 555, 560 (6th Cir. 2016)....................................... 7, 18

*Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ............................................ 22, 23

*Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) ............................. 24

*U.S. ex rel. Karvelas v. Tufts Shared Servs., Inc.*, 433 F.Supp.3d 174 (D. Mass. 2019) .......... 20

*U.S. ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158 (8th Cir. 2019)............. 20

*U.S. ex rel. Wilkins v. State of Ohio*, 145 F.3d 1333 (6th Cir. 1998) ................................. 20

*Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056 (6th Cir. 2014)................................ 19

*Wilkins v. St. Louis Housing Authority*, 314 F.3d 927, 930 (8th Cir. 2002) ........................... 22

*Williamson v. Slusher*, 17-4271, 2018 W.L. 11303086 (6th Cir. Oct. 29, 2018) ................. 14

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)). ................................. 6

## STATUTES

31 U.S.C. § 3730(h) ...................................................................................... passim

## OTHER AUTHORITIES

Black's Law Dictionary 639 (10th ed. 2014).......................................................... 19

## RULES

Fed.R.Civ.P. 56(c) ......................................................................................... 5

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether Plaintiff engaged in protected activity under the False Claims Act where she admitted she was unaware of applicable Medicare billing regulations, had no role in reviewing or submitting claims, and lacked knowledge of whether claims were ever denied.

   **Answer: No.**

2. Whether Plaintiff can establish a reasonable belief that fraud was occurring where her job duties were limited to charting patient encounters, she lacked access to billing records, and even Defendants' biller testified she did not understand billing distinctions between public and private insurers.

   **Answer: No.**

3. Whether Plaintiff placed Defendants on notice of alleged FCA violations where her internal complaints were vague, speculative, and lacked any reference to government fraud or unlawful billing practices.

   **Answer: No.**

4. Whether Plaintiff can satisfy the elements of a prima facie FCA retaliation claim where she did not engage in protected activity, provided no notice of alleged fraud, and was terminated for legitimate reasons unrelated to any alleged complaint.

   **Answer: No.**

5. Whether interim earnings must be deducted before the statutory doubling of back pay under the False Claims Act's retaliation provision.

   **Answer: Yes.**

6. Whether Plaintiff can obtain punitive damages under the FCA.

   **Answer: No.**

## <u>MOST CONTROLLING AUTHORITIES</u>

1. *Fakorede v Mid-S. Heart Ctr., P.C*., 709 Fed. App'x 787 (6th Cir. 2017);

2. *McKenzie v. BellSouth Telecomms., Inc*., 219 F.3d 508, 518 (6th Cir. 2000);

3. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

4. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003);

5. 31 U.S.C. § 3730(h);

6. Fed. R. Civ. P. 56

## INTRODUCTION

Before the Court is an anomalous case that immediately triggers questions which are not favorable for Plaintiff – a False Claims Act retaliation claim without a concurrent False Claims Act Claim.

Plaintiff Julia Zimmerman alleges a single remaining claim under the False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h), asserting that she was terminated for raising concerns about improper billing practices. But now that discovery has closed, the record contains no evidence supporting her theory. Her own testimony confirms that she never submitted, reviewed, or coded bills, and lacked the accurate knowledge and understanding of the CMS regulations she now claims were being violated. The emails she points to as evidence of whistleblowing show vague, subjective concerns focused on her personal liability—not any fraud against the government. And the biller responsible for submitting claims during Plaintiff's tenure has confirmed that COVID-era CMS guidelines were followed and that Plaintiff played no role in, and had no knowledge of, the billing process at all.

Plaintiff has also failed to name the proper defendant. She was employed by Ferndale Management, LLC, not by any of the named entities or individuals. That error is dispositive, as the FCA's retaliation provision permits claims ***only*** against a plaintiff's employer. Additionally, individual defendants are not subject to liability under § 3730(h) as a matter of law. These threshold defects preclude recovery.

Plaintiff's claim rests not on evidence of protected activity or unlawful

retaliation, but purely on speculation, misunderstanding, and post-hoc narrative shifts. As such, summary judgment should be granted in full.

Finally, even if Plaintiff could overcome these fundamental deficiencies, her potential recovery would be strictly limited by statute. The FCA's remedies are compensatory, not punitive, and any back-pay award must reflect actual lost income after deducting interim earnings—only then can the statutory multiplier apply. To hold otherwise would distort the statute's purpose and improperly award a windfall, rather than make-whole relief.

## **FACTUAL AND PROCEDURAL BACKGROUND**

*Procedural History and Remaining Claim*:

This case arises from Plaintiff Julia Zimmerman's former employment as a physician assistant at medical practices affiliated with the named defendants. Plaintiff initially filed suit asserting multiple causes of action under both federal and state law, including retaliation under the False Claims Act, 31 U.S.C. § 3730(h), as well as claims under the Michigan Medicaid False Claims Act, various employment statutes, and tort-based theories. (Dkt. 11).

Defendants previously moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6) (Dkt. 19). In a detailed Opinion and Order issued on August 20, 2024, the Court granted the motion in part, dismissing every claim except Plaintiff's retaliation claim under the False Claims Act. **See August 20, 2024 Opinion and Order Granting in Part Defendants' Motion to Dismiss (Dkt. 28)**. While the Court found that Plaintiff

2

had sufficiently alleged, for pleading purposes, a potential claim of FCA retaliation, it expressly rejected all remaining causes of action for failure to state a claim upon which relief could be granted. *Id*.

Following that ruling, the parties engaged in fact discovery, and no further claims have been added or revived. Discovery is now closed, and the evidentiary record confirms that Plaintiff cannot meet her burden under § 3730(h). As discussed below, the undisputable facts show that Plaintiff did not engage in protected activity, she did not place any defendant on notice of any alleged FCA violation, and she was terminated for legitimate reasons unrelated to any alleged whistleblowing or other retaliatory reason. Summary judgment is therefore warranted.

*Plaintiff Fails to Name Her Actual Employer*:

Plaintiff Julia Zimmerman, a physician assistant, was employed by non-party Ferndale Management, LLC ("**Ferndale**") from October 2022 until her termination on May 9, 2023. **Exhibit A, Dr. Pensler Dep. 7:23-8:16.** Despite her clear awareness of Ferndale's role as her employer—including sending pre-suit correspondence specifically addressed to Ferndale—Plaintiff did not name that entity in this action. **Exhibit B – Litigation Hold Letter**. Instead, she improperly brought suit against two individual physicians and three professional entities that did not employ her, and that are not subject to liability under the False Claims Act's anti-retaliation provision.

Almost immediately after she was hired, Plaintiff struggled with core job responsibilities, including timeliness and attendance, clinical execution, and patient

3

care. **Exhibit C, Dr. Hill Dep. 148:13-150:9**. Though Defendants invested substantial time and resources in her training, Plaintiff's performance did not improve. *Id.* Furthermore, documents obtained through discovery confirm that Plaintiff was actively seeking other employment for weeks leading up to her termination—submitting applications, attending interviews, and corresponding with recruiters, including during clinic/work hours. **Exhibit D, Plaintiff's Responses to First Set of Discovery**.

Plaintiff alleges that she raised concerns regarding Medicare "incident-to" billing during her brief tenure; however, the concerns she voiced were vague, non-specific, and conclusory—and, notably, have not been supported in any way by the record developed by Plaintiff during discovery. Her assertions reflected a fundamental misunderstanding of then-applicable CMS guidance during the COVID-19 public health emergency. ***See*** **Exhibit E – Simrath Davidson Dep. 122:9-25**. Despite Defendants best efforts to explain Plaintiff's misunderstanding of these guidelines, they were unsuccessful. Ultimately Plaintiff's conduct continued to get worse, ultimately resulting in Plaintiff refusing to see or treat patients. **Exhibit L.**

What Plaintiff characterizes as "complaints" were, in reality, vague grumblings lacking specificity or clarity, and they failed to put any individual at the practice on notice of a particularized concern. The few written communications she relies on contain no language that would alert a reasonable person to the nature of her alleged concerns, and her self-serving summaries of verbal conversations—conveniently

insulated from any documentary evidence—have not been substantiated at any point during the course of discovery. **Exhibit G – April 13, 2023 – May 8, 2023 Emails**.

By the time of her termination, Plaintiff had already met with legal counsel and was preparing to exit her role to a new employer. **Exhibit D.** Given the absence of protected activity, the lack of any causal connection, and the improper parties named in this suit, Defendants are entitled to summary judgment as a matter of law.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, the non-moving party must provide specific facts to rebut or

5

cast doubt on the moving party's proffered facts.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp*., 477 U.S. at 322-23.

## **ARGUMENT**

### I.    **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER THE FALSE CLAIMS ACT**

Plaintiff does not plead facts sufficient to set forth a facially plausible claim of a retaliation claim under the FCA. To succeed on a FCA retaliation claim, a plaintiff must show/plead that: (1) she engaged in a protected activity; (2) the employer knew she engaged in the protected activity; and (3) the employer discharged or otherwise discriminated against the employee as a result of the protected activity. *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 Fed. Appx 787, 789 (6th Cir. 2017); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)).

An employee need not "uncover an actual FCA violation to undertake protected activity," but her allegations of fraud must have been made in good faith and also be objectively reasonable. See *Jones-McNamara v. Holzer Health Sys*., 630 F. App'x 394, 399 (6th Cir. 2015).

Plaintiff's failure to plead/support with evidence each element of the claim is discussed below.

### A. Plaintiff Did Not Engage in a Protected Activity

As a result of Congress' 2009 amendment to the FCA, under the FCA's anti-retaliation provision, a protected activity now consists of either (1) "lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action under this section," or (2) "other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3130(h)(1). However, even after the 2009 amendment which expanded this scope, the protected activity "must still be related to exposing fraud or involvement with a false claims disclosure." *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000).

If the protected activity is internal reporting, the reports "must allege fraud on the government." *Id.* It is not enough to assert mere regulatory violations. *Id.* at 516–18. "Although internal reporting of suspected fraud or false claims can form the basis of 'protected activity' under the [FCA], the internal reporting of wrongdoing ... must establish some nexus to the FCA to satisfy the 'in furtherance off prong of an FCA claim, by reasonably leading to a viable FCA action.'" *Id.* at 517.

Simply put, Plaintiff has not provided any facts or evidentiary support to plausibly show that she engaged in protected activity. To plead protected activity, Plaintiff must allege conduct directed at stopping what was ***reasonably*** believed to be fraud committed against the federal government. *Fakorede,* 709 F. App'x at 789

7

(citing to *Miller v. Abbott Labs*., 648 F. App'x. 555, 560 (6th Cir. 2016) (emphasis added) (quoting *Jones-McNamara v. Holzer Health Sys*., 630 F. App'x 394, 399 (6th Cir. 2015). Plaintiff has failed to meet this burden.

Rather, Plaintiff vaguely referenced a broad array of non-specific alleged communications that she now contends constitute protected activity (*see* Dkt. 11). Yet many of these references are blatant mischaracterizations of the written communications themselves, which contain no language remotely suggesting the concerns she now claims to have raised. **Exhibit G**.

Plaintiff also referenced several oral conversations in which she supposedly voiced detailed compliance concerns; however, these claims remain wholly unsubstantiated (***see* Dkt. 11**). Despite full document production and multiple depositions, Plaintiff has failed to produce any evidence—testimonial or otherwise—that corroborates these narratives. Her allegations rest almost entirely on her own self-serving account, unsupported by the factual record developed through discovery.

Plaintiff has failed to produce ***any*** evidence supporting her claims that she took any affirmative steps to report or oppose conduct she reasonably believed to be fraudulent against the government. At most, her allegations reflect general unease about who was seeing patients and how services were billed—without any articulation of what specifically she believed was improper.

Her assertion that billing was done "as though performed by physicians" is both conclusory and unsupported, and she fails to identify any particular billing code, claim

8

submission, or practice that she questioned or challenged. This is unsurprising, since she had no involvement in the billing/coding/claims submission process, and had no idea what was actually billed (or who the payor of the bill was). **Exhibit E – Simrath Dep. 124:24-125:6.** The purported billing issues Plaintiff referenced are related to Medicare's "incident-to" requirements, which are specific to Medicare and do not uniformly apply across private insurers. ***Id.* 121:4-24**. Plaintiff admitted she was unfamiliar with the distinctions between insurers' billing rules[1], which insurance was being billed for any particular patient (if at all), and the testimony of Simrath Davidson (Defendants' head biller and coder) confirmed that neither Plaintiff's questions nor her comments conveyed any clear or specific concern that could reasonably be interpreted as a report of fraud. Plaintiff's remarks lacked the detail necessary to put anyone at the practice on notice of a protected activity under the FCA. **See Exhibit G**.

Plaintiff's purported "concerns" centered on the notion that Dr. Hill and Dr. Pensler were not always physically present in the office and that billing nonetheless occurred in their names under the incident-to framework. But even assuming she held this belief, it was not a reasonable one under the circumstances.

COVID-related changes to "incident-to" billing requirements had been in effect since 2020—several years before Plaintiff was hired—and remained in effect throughout her entire employment. **Exhibit H – CMS Guidelines**. These COVID rules stated that a physician could supervise PA's by being available for "real time audio /

---

[1] **Exhibit E – Simrath Davidson Dep. 122:9-25.**

video," and be permitted to bill in the physician's name as "incident-to." *Id*. There is no genuine dispute that Defendants complied with these requirements. Both Dr. Pensler and Dr. Hill testified unequivocally that one of them was always available—either in person or via real-time electronic communication—to supervise Plaintiff as needed. **Exhibit A – Pensler Dep. 101:20-121:1**; **Exhibit C – Hill Dep. 48:5-11**. And even if Defendants' testimony were somehow disregarded, Plaintiff herself conceded this point—first, in her original Complaint, where she acknowledged that the physicians "could be reached by phone or were able to stop by the office for a consult." See Dkt. 1, ¶ 31.

Plaintiff further testified in her deposition that her understanding of the applicable billing rules came largely from AAPA newsletters and similar resources. **Exhibit I – Zimmerman Dep. 91:12-18**. Although Plaintiff produced no such materials in discovery despite specific requests, Defendants have independently located an AAPA article from the relevant timeframe explicitly confirming the CMS position: that incident-to billing was permitted so long as real-time audio or video supervision was available. **Exhibit J – AAPA Article**.

Finally, Plaintiff admitted in her deposition that she did not have a clear or complete understanding of the incident-to requirements at the time she allegedly voiced concerns.

> Q: (Defendants' Counsel): "Were these incident-to criteria ever changed or revised as a result of the COVID pandemic?"

10

A: (Julia Zimmerman): "I'm aware now that there has been some revisions, but at that time I was not aware."
**Exhibit I – Zimmerman Dep 40:7-10.**

In short, not only do Defendants' accounts consistently confirm compliance, but Plaintiff's own words—both in her pleadings and under oath—undermine any suggestion to the contrary. Each of these admissions independently defeats her claim; together, they leave no room for genuine dispute.

Additionally, during her deposition, Plaintiff finally acknowledged that certain private insurance plans prohibit physician assistants from being listed as the billing or servicing provider and that, in such instances, it is proper for claims to be submitted under a supervising physician's name. **Exhibit I – Zimmerman Dep. 97:2-99:4**. This admission directly undermines her central theory—that billing under a physician's name was inherently improper—and further illustrates that her concerns, to the extent they existed, were based on misunderstanding or mischaracterization of standard industry practices.

Plaintiff testified at her deposition that she worked frequently with Defendants' medical biller and coder, Simrath Davidson. **Exhibit I – Zimmerman Dep. 47:9-48:4**. However, when asked whether Plaintiff demonstrated any understanding of the differences between billing requirements for private versus government insurers, Ms. Davidson testified that she did not believe Plaintiff had any such understanding. **Exhibit E – Simrath Davidson Dep. 122:9-25.**

It is clear that Plaintiff lacked the foundational knowledge, functional

involvement, and factual basis necessary to form a ***reasonable*** belief that Defendants were engaged in fraud. She was unfamiliar with governing regulations, uninvolved in the billing process, and unable to distinguish between basic reimbursement structures. ***Id***. She did not identify any specific conduct that could plausibly support a claim under the FCA, nor did she communicate any concern in a manner that would place the practice on notice of protected activity. These deficiencies are fatal. Because Plaintiff did not engage in protected conduct under 31 U.S.C. § 3730(h), her retaliation claim must be dismissed.

### B. Plaintiff Did Not Provide Notice of Her Alleged Complaints to Defendants

Even assuming arguendo that Plaintiff did engage in protected conduct, she must also demonstrate that Defendants were actually aware she was engaged in such conduct. *McKenzie*, 219 F.3d at 517. General complaints or internal concerns are not enough; the employer must be on notice that the employee is alleging ***fraud on the government***. *Id.*

This is an important distinction because the False Claims Act protects only those employees who put their employer on notice of alleged fraud against the federal government—not merely general misconduct or billing concerns. See *McKenzie*, 219 F.3d at 517. Here, none of Plaintiff's alleged complaints or written correspondence specifically reference Medicare or any other government payor. ***See* Exhibit G**. At most, the communications reference billing issues or concerns applicable to "insurance" or "insurance providers" broadly, which would equally apply to private insurers. This lack of specificity is fatal to her claim. Indeed, Simrath Davidson, one of the individuals

Plaintiff claims to have voiced her concerns to, testified that Plaintiff lacked a clear understanding of the billing requirements applicable to Medicare versus private insurance. Such testimony only further undermines any claim that Plaintiff's purported concerns were reasonably understood by Defendants—or could be understood—as complaints about government fraud.

Here, Plaintiff never communicated concerns in a manner that could reasonably be interpreted as implicating the False Claims Act's requirements related to "fraud on the government". The only written complaint Defendants received prior to her termination referenced concerns about her own "personal liability" without identifying any false claims, fraudulent conduct, or billing practices that would support an FCA violation. **See Exhibit G**. The email was vague, disjointed, and lacked any factual basis suggesting knowledge of regulatory or billing rules. Simrath Davidson, the head biller and coder of Defendants, testified that she did not believe Plaintiff had an understanding of the applicable billing regulations or requirements. **Exhibit E – Simrath Davidson Dep. 122:9-25.** And Plaintiff herself testified that she was not even aware of these COVID regulations and changes to "incident-to" billing, which were in effect throughout the entirety of her employment with Ferndale Management, LLC, and had been in effect for several years prior to Plaintiff even being hired. **Exhibit I – Zimmerman Dep. 40:19-22.**

At best, Plaintiff's comments made to Defendants can constitute grumblings about regulatory compliance. However, a specific review of this correspondence fails to

13

identify any specific insurance providers whom Plaintiff alleges were being "fraudulently billed." **Exhibit G**.

### C. Plaintiff Cannot Demonstrate a Causal Connection

As Plaintiff has not provided facts to prove protected activity or notice to the employer, she cannot plead that she was discharged "because" of protected activity. *See* FCA, 3730(h). The FCA's legislative history states "the retaliation [must be] motivated at least in part by the employee's engaging in protected activity." *McKenzie v BellSouth Telecom., Inc.,* 219 F3d 508, 518 (6th Cir. 2000). Retaliation claims are dismissible based on a failure to "***sufficiently plead*** a causal connection between [protected activity] and the alleged acts of retaliation." *Williamson v. Slusher*, 17-4271, 2018 WL 11303086, at *2 (6th Cir. Oct. 29, 2018) (emphasis added). Plaintiff will likely argue that the "temporal proximity" of her alleged comments to her termination create an inference of causation. However, the Sixth Circuit has regularly stated that temporal proximity alone cannot establish retaliatory motive. *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

Here, in addition to the complete absence of any facts supporting alleged protected activity or notice to a Defendant thereof, Plaintiff has failed to produce any facts or statements by a Defendant that would support a plausible inference that her termination was "because of" protected activity, as required under 31 U.S.C. § 3730(h). Instead, Plaintiff relies on bare legal conclusions and vague allegations, without any developed factual basis, merely invoking conclusory terms like

"fraudulent" and "illegal." Despite extensive and voluminous discovery, she has produced no evidence to substantiate these claims. No documents or testimony indicate what, if anything, was said to any Defendant that would support a reasonable inference that her termination was motivated by protected conduct.

Plaintiff may attempt to argue that the "temporal proximity" of her alleged complaints and her termination creates an inference of causation. The Sixth Circuit has regularly stated that "temporal proximity alone can [not] establish retaliatory motive." *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

Here, a review of the communications prior to/close in time to Plaintiff's termination (*e.g.*, the email of May 8, 2023) (as well as any communication alleged in the FAC) shows Plaintiff is making legal conclusions and masquerading those legal conclusions as facts. **Dkt. 11, ¶¶ 33 and 36; Exhibit G**. Plaintiff's own May 8, 2023, email shows that she was at best urging the need for compliance with billing guidance for all claims, ***regardless of the patient's insurance provider***. **Exhibit G.**

While these vague and conclusory allegations may have sufficed to survive Defendants' Motion to Dismiss under Rule 12(b)(6), they do not withstand scrutiny on summary judgment. Following extensive written discovery and multiple depositions, Plaintiff has failed to produce any evidence substantiating her claims. No documents, testimony, or other evidence support a finding that she engaged in protected activity, that Defendants were on notice of such activity, or that her termination was causally connected to it. Each element fails independently—and

collectively, the claim collapses entirely.

### D. Plaintiff's Termination Was Based on Legitimate, Non-Retaliatory Grounds

Even assuming Plaintiff could satisfy the elements of protected activity and notice—which she cannot—her retaliation claim still fails because she cannot show that her termination was motivated by retaliatory animus. Defendants had reasonable, performance-based grounds to terminate Plaintiff's employment, supported by their experience with her work and professional conduct over the course of her tenure.

From early in her employment, Plaintiff exhibited performance issues that, in the view of Defendants, raised concerns about her reliability and professionalism. **Exhibit A – Pensler Dep. 163:9-15.** Additionally, Plaintiff refused to follow the mandatory "clocking in/out" requirement for all employees, failing to clock in even a single time. **Exhibit K – Time Sheets**. Over time, it became apparent to practice leadership that Plaintiff was not consistently meeting expectations for patient availability and clinical engagement, and was often found "hiding out" in the Med Spa, neglecting the duties and responsibilities she was hired to complete. **Exhibit A – Pensler Dep. 199:7-13.**

Defendants initially attributed Plaintiff's early struggles to the expected learning curve of a new provider. Given the time and financial resources invested in recruiting and onboarding her, Defendants made efforts to support Plaintiff's transition and provide her with opportunities to improve. However, her performance did not progress, and additional concerns, including her refusal to follow the mandatory timekeeping procedures. **Exhibit K.** Additionally, Plaintiff frequently refused to see any patients,

without reason and regardless of whether Dr. Pensler was present at the clinic, for approximately 6 weeks before she was terminated.  **Exhibit A, Pensler Dep. 187:10-188:9; Exhibit L – Simrath April 17, 2023 Text Message re: Plaintiff's Refusal to Work.**

In addition to these performance issues, Plaintiff was perceived as increasingly uncooperative and resistant to feedback. These concerns came to a head during an all-staff meeting in or around March or April 2023, during which Plaintiff screamed at Dr. Pensler and openly challenged Dr. Pensler's medical judgment in front of the entire office staff/medical team. **Exhibit A – Pensler Dep. 161:7-162:3.** This incident reinforced preexisting concerns about Plaintiff's ability to function within the practice's collaborative structure, and further contributed to the decision to terminate her. It is a rare work environment indeed where screaming at a supervisor is allowed without repercussions.

The situation further deteriorated in the final weeks of Plaintiff's employment, culminating in her outright refusal to see any patients. This was confirmed by both Dr. Pensler and Simrath Davidson, each of whom testified that Plaintiff simply stopped performing the core duties of her role as a provider. **Exhibit A, Pensler Dep. 187:10-188:9**; **Exhibit E – Simrath Davidson Dep. 122:9-25.** In fact, contemporaneous text messages corroborate that Plaintiff declined to see scheduled patients, causing disruption to clinic operations and placing added strain on her colleagues. **Exhibit L.**

This conduct—refusing to perform essential job functions—occurred immediately prior to her termination and was the final, independent justification for her dismissal. Each of the issues identified above—ranging from performance deficiencies to unprofessional conduct to refusal to treat patients—would have independently justified termination. Taken together, they presented a clear and compelling basis for Defendants' decision to end her employment.

Additionally, evidence obtained during discovery confirmed that Plaintiff had begun searching for other employment at least a month prior to her termination. **Exhibit D - Plaintiff's Discovery Responses.** These records reflect communications with prospective employers, some of which occurred during business hours and while Plaintiff was present at the clinic. *Id*. These communications indicate that Plaintiff was independently disengaging from her role, further undercutting any inference that her termination was retaliatory.

Plaintiff has not produced any evidence suggesting that these reasons were pretextual or that her alleged protected activity was the true cause of her termination. Accordingly, her claim under § 3730(h) fails as a matter of law.

## II. DEFENDANTS ARE NOT "EMPLOYERS" UNDER THE FALSE CLAIMS ACT
### A. Plaintiff Has Failed to Name Her Actual Employer

To prevail under 31 U.S.C. § 3730(h), a plaintiff must establish that: (1) she engaged in protected activity; (2) her *employer* knew of that activity; and (3) her *employer* took adverse action because of it. *See Miller v. Abbot Lab'ys*, 648 F. App'x

18

555, 559 (6th Cir. 2016); *McKenzie,* 219 F.3d at 514 (6th Cir. 2000). By its plain terms, the statute imposes liability only on a plaintiff's **__employer__**—not on individuals, supervisors, or affiliated entities. (See *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056 (6th Cir. 2014) (an "employee" is "[s]omeone who works in the service of another person [the employer] under an express or implied contract of hire, under which the employer has the right to control the details of work performance." (quoting Black's Law Dictionary 639 (10th ed. 2014))).

Here, Plaintiff has failed to name the proper defendant. Her <u>actual</u> employer was Ferndale Management, LLC—not any of the named defendants. **See Exhibit A, Dr. Pensler Dep. 7:23-8:16.** This is confirmed by her own W-2 records,[2] her litigation hold letter,[3] as well as in the depositions of Dr. Pensler, Dr. Hill, and Plaintiff herself. See **Exhibit A, Dr. Pensler Dep. 7:23-8:16; Exhibit B – Dr. Hill Dep. 11:22-12:1; and Exhibit I – Zimmerman Dep. 47:21-48:11.** Defendants even raised this issue in their Answer and Affirmative Defenses, stating explicitly that "Defendants were not Plaintiff's employer within the meaning of the False Claims Act." Dkt. 29, Pg. 3, ¶ 11; Pg. 10, ¶ 7. Despite being aware of the Plaintiff's actual employer since before this action was even filed, Plaintiff has taken no steps to substitute or add the correct party.

---

[2] **Exhibit M – Plaintiff's W2 Records.**
[3] **Exhibit B.**

This failure is not merely procedural—it is fatal. Section 3730(h) authorizes retaliation claims _**only**_ against an employer, and Plaintiff's continued pursuit of claims against non-employer parties warrants dismissal.

### B. The Individual Defendants Are Not Subject to Liability Under the Retaliation Provision of the FCA

In addition to failing to name her actual employer, Plaintiff improperly seeks to hold two individuals—Dr. Pensler and Dr. Hill—personally liable under § 3730(h). But courts across jurisdictions have overwhelmingly rejected individual liability under the FCA's retaliation provision. Supervisors, managers, or co-workers who are not the plaintiff's employer cannot be sued in their individual capacity under § 3730(h), regardless of their involvement in the alleged adverse action. See *U.S. ex rel. Wilkins v. State of Ohio*, 145 F.3d 1333 (6th Cir. 1998). Courts across multiple jurisdictions have uniformly held that individual, non-employer defendants cannot be held liable under the FCA's retaliation provision. See, e.g., *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016); *U.S. ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158 (8th Cir. 2019); *U.S. ex rel. Karvelas v. Tufts Shared Servs., Inc.*, 433 F. Supp. 3d 174 (D. Mass. 2019); *Gage v. Michigan Dep't of Health & Hum. Servs.*, 2023 WL 6394068 (W.D. Mich. 2023)[4].

These decisions apply squarely here. Neither Dr. Pensler nor Dr. Hill employed Plaintiff, and they cannot be held personally liable under the FCA's retaliation

---

[4] Copies of all unpublished cases are attached as **Exhibit F**.

provision. Plaintiff's decision to continue litigating against them—despite clear authority barring such claims—only underscores the flawed foundation of her case. The claims against the individual defendants, like those against the improperly named corporate entities, must be dismissed.

### III. EVEN IF LIABILITY WERE FOUND, PLAINTIFF'S DAMAGES ARE LIMITED AS A MATTER OF LAW

Even assuming, arguendo, that Plaintiff could establish liability under the False Claims Act's retaliation provision, her recovery would be strictly limited by the statutory framework and well-reasoned case law interpreting it. The remedies provided under 31 U.S.C. § 3730(h) are compensatory in nature. Plaintiff is not entitled to punitive damages as a matter of law, and any back-pay award must reflect net economic loss—interim earnings must be subtracted prior to applying the statutory doubling.

Because the parties fundamentally dispute how damages should be calculated under § 3730(h), this issue will inevitably require resolution before any award can be determined at trial. Addressing the proper formula methodology at this stage will not only streamline the presentation of evidence at trial but also materially aid the parties in evaluating potential exposure and engaging in meaningful settlement discussions. Clarifying this point of law now promotes judicial efficiency, narrows the issues for trial, and may even absolve the need for further litigation should the damages framework render continued pursuit of the case impractical.

### A. Back-Pay Under the FCA Must Reflect Actual Economic Loss, with Interim Earnings Deducted *Before* Applying the Statutory Multiplier

Plaintiff's theory of damages improperly inflates any potential back-pay award by seeking to double her full salary without accounting for her interim earnings. This approach is legally flawed and contrary to the plain language and remedial purpose of § 3730(h).

Although the Sixth Circuit has not definitively ruled on the order in which mitigation is applied under § 3730(h), the persuasive authority from multiple other courts of appeals is uniform: interim earnings must be deducted ***before*** the statutory doubling of back-pay. Allowing the opposite approach would inflate damages well beyond any actual loss. Even a brief or modest period of unemployment could yield a disproportionately large award, untethered to Plaintiff's real economic harm. Rather than restoring her to the position she would have occupied but for the alleged retaliation, such a calculation would result in an unwarranted windfall—an outcome squarely at odds with the statute's compensatory purpose.

In *Wilkins v. St. Louis Housing Authority*, 314 F.3d 927, 930 (8th Cir. 2002), the Eighth Circuit held that back-pay under § 3730(h) must be net of interim earnings before doubling. This ensures that the award reflects actual economic loss, not an exaggerated windfall. Likewise, *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) rejected the notion that a plaintiff could double her entire pre-termination salary regardless of post-termination income. That court made clear that the purpose of § 3730(h) is to make the employee whole—not to punish the employer. See also

22

*Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886 (8th Cir. 2000), (mitigation must be applied prior to calculating statutory damages).

This Court should follow the well-reasoned approach of these decisions. Plaintiff's damages, if any, must reflect actual lost income after deducting interim earnings, and only then can the statutory multiplier apply. Such a result would be fundamentally inconsistent with the statute's remedial purpose, which is to make the plaintiff whole—not to grant a windfall. The proper measure must restore what was lost, not create a net gain. Any approach to the contrary would distort the statute's plain meaning and produce unjust enrichment.

### B. Punitive Damages Are Not Recoverable Under the FCA's Retaliation Provision

Plaintiff has taken the position that she is entitled to punitive damages under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h). That argument has no support in the statute's text and is inconsistent with the overwhelming weight of authority interpreting it. Section 3730(h) provides for specific, compensatory remedies: reinstatement, double back-pay with interest, and compensation for special damages including emotional distress and attorneys' fees. 31 U.S.C. § 3730(h).

While the Sixth Circuit has not yet squarely addressed the availability of punitive damages under § 3730(h), the reasoning adopted by other circuits is both persuasive and consistent with fundamental statutory interpretation principles. In *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999), the Seventh Circuit held that punitive damages are not recoverable under § 3730(h) because doing so would render the statutory double

23

back-pay provision superfluous. The court explained that Congress deliberately chose a double-damages scheme to balance deterrence and compensation, and that grafting punitive damages onto this framework would distort the statute's remedial purpose.

Similarly, in *Grant on behalf of United States v. Zorn*, 107 F.4th 782 (8th Cir. 2024), the Eighth Circuit emphasized that allowing punitive relief under § 3730(h) would render the statute's express remedies redundant. That court reinforced the idea that § 3730(h) is a remedial provision intended to restore the plaintiff's economic position—not to impose punishment.

Likewise, the Eleventh Circuit reached the same conclusion in *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000), where it held that punitive damages are incompatible with statutory schemes focused solely on compensation. The FCA's anti-retaliation provision falls squarely within that category.

This Court should follow the reasoning adopted in these well-reasoned decisions. The statutory scheme in § 3730(h) reflects Congress's intent to restore lost wages and related harm—not to punish employers or create an outsized recovery. Punitive damages are not available, and any request by Plaintiff for such relief must be dismissed as a matter of law.

## VII. CONCLUSION

Plaintiff's claims fail as a matter of law. She did not engage in protected activity under the False Claims Act, did not provide notice of any alleged fraud to her employer, and was terminated for legitimate, well-documented reasons that had nothing to do with

24

any purported whistleblowing. Moreover, Plaintiff has named the wrong parties in this action. The record confirms that her actual employer was not any of the named defendants, and individual liability is not available under the FCA's retaliation provision. This fundamental defect alone warrants dismissal of her claims.

Even if liability were established, Plaintiff's recovery would be strictly limited under the governing statutory framework. The applicable authority makes clear that interim earnings must be deducted before applying the statutory doubling of back-pay, and punitive damages are not available under 31 U.S.C. § 3730(h). This Court should adopt that established approach to ensure that any recovery reflects actual economic loss, not an improper windfall.

For all these reasons, Defendants respectfully request that the Court grant summary judgment and dismiss the Amended Complaint in its entirety, with prejudice.

**Dated**: April 18, 2025,            Respectfully submitted,
                                      **THE HEALTH LAW PARTNERS, P.C.**

                                      /s/ Clinton Mikel
                                      Clinton Mikel, (P73496),
                                      Attorney for Defendants
                                      32000 Northwestern Hwy., Suite 240
                                      Farmington Hills, MI 48334
                                      Phone (248) 996-8510
                                      Fax (248) 996-8525
                                      cmikel@thehlp.com

## **CERTIFICATE OF SERVICE**

I certify that on the 18th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.

/s/Mark V. Breaugh
Mark V. Breaugh
The Health Law Partners, P.C.
Attorneys for Defendants
32000 Northwestern Hwy., Ste. 240
Farmington Hills, MI 48334
(248) 996-8510
mbreaugh@thehlp.com

26